## CAMERON *v.* UNITED STATES.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 165.   Argued October 21, 1913.—Decided January 5, 1914.

The estate of the bankrupt is in process of administration after the petition has been filed and a receiver appointed and an examination may be ordered at any time thereafter under § 21a of the Bankruptcy Act.

Section 7 of the Bankruptcy Act does not prevent a prosecution for perjury in the giving of testimony by the bankrupt; the immunity applies to past transactions concerning which the bankrupt is examined. *Glickstein* v. *United States*, 222 U. S. 139.

In the absence of clearly expressed legislative intent, retrospective operation will not be given to statutes; nor in absence of such intent will a statute be construed as impairing rights relied upon in past conduct when other legislation was in force. *Union Pacific R. R. Co.* v. *Laramie Stock Yards, ante,* p. 190.

Section 860, Rev. Stat., although repealed before testimony was used, if in force when the testimony was given, protected the giver thereof from having it used against him in a criminal proceeding.

The use of testimony given by the bankrupt in a hearing before a commissioner to contradict his testimony given before the referee, in a trial on an indictment for perjury in giving the latter testimony, violates the immunity guaranteed under § 860 Rev. Stat., and the use thereof is reversible error.

192 Fed. Rep. 548, reversed.

THE facts, which involve the immunity of one examined in a bankruptcy proceeding prior to the repeal of § 860, Rev. Stat., from having his testimony used against him, and the construction of §§ 7 and 21a of the Bankruptcy Act, are stated in the opinion.

*Mr. Howard S. Gans* for petitioner:

Under § 860, Rev. Stat., defendant was guaranteed against the reception in evidence against him of any part of the testimony given by him in either of the bankruptcy

proceedings, save that which in the indictment based upon that proceeding was assigned as perjurious.

Testimony given in the bankruptcy proceeding other than that assigned as perjurious was read in evidence to the defendant's prejudice.

Testimony given before the commissioner was used to prove the falsity of testimony given before the referee.

The prosecution was permitted to read testimony given before the referee which contradicted testimony given before the commissioner on a matter not assigned as perjurious in either indictment.

Testimony not assigned as perjurious was read as a basis for contradiction by the witness Smith, and thus the jury was permitted to consider further evidence that the defendant had sworn falsely in matters not assigned as perjury in either indictment.

The prosecution was permitted to read testimony not assigned as perjurious on the theory that it tended to establish his criminal intent.

The right to immunity from the use of this testimony was not affected by the subsequent repeal of § 860, Rev. Stat.  *Lapham* v. *Marshall,* 51 Hun, 36, 41; *Sorenson* v. *United States,* 143 Fed. Rep. 820; *Bram* v. *United States,* 168 U. S. 532, 550; *Whitfield* v. *Aetna Life Ins. Co.,* 144 Fed. Rep. 356, 360; *United States* v. *Kirby,* 7 Wall. 482–486; *Chew Heong* v. *United States,* 112 U. S. 536–554; *Heydenfeldt* v. *Daney Mining Co.,* 93 U. S. 634, 638.

A construction which would involve for the Government the disgrace of a breach of good faith, will by every possible means be resisted.  *United States* v. *Taylor,* 104 U. S. 216, 221; *Town of Red Rock* v. *Henry,* 106 U. S. 596, 604; *United States* v. *Central Pac. R. R. Co.,* 118 U. S. 235, 240; *United States* v. *Hosmer,* 9 Wall. 432.

A statute will not be given a retrospective operation, unless by its plain terms that result is rendered imperative. *White* v. *United States,* 191 U. S. 542, 552; *United States*

v. *Heath*, 3 Cranch, 399, 408; *Twenty per cent. Cases*, 20 Wall. 179, 187; *Reynolds* v. *McArthur*, 2 Pet. 434.

It will never be given such an effect so as to destroy vested rights. *United States* v. *Chew Heong*, 112 U. S. 536, 559; *Twenty per cent. Cases*, 20 Wall. 179, 187; *Davis* v. *Bohle*, 92 Fed. Rep. 325, 328.

All general terms in statutes should be limited in their application so as not to lead to injustice or oppression or any unconstitutional operation if that be possible. It will be presumed that exceptions were intended which would avoid results of that nature. *Carlisle* v. *United States*, 16 Wall. 147, 153; *Trinity Church* v. *United States*, 143 U. S. 457, 460; *United States* v. *Kirby*, 7 Wall. 482; *Kennedy* v. *Gibson*, 8 Wall. 498, 506; *Taylor* v. *United States*, 207 U. S. 120, 125; *Hawaii* v. *Mankichi*, 190 U. S. 197, 212.

The right of immunity when acquired is a vested right. *Society &c.* v. *New Haven*, 8 Wheat. 461, 494; *Twenty per cent. Cases*, 21 Wall. 179, 187; *Moore* v. *State*, 43 N. J. Law, 203, 227, 256; *Commonwealth* v. *Duffy*, 96 Pa. St. 506, 514; *State* v. *Sneed*, 25 Texas Rep. (Supp.) 66; *State* v. *Keith*, 63 N. Car. 140, 144.

Defendant was examined as one of the officers of the bankrupt company, and *pro hac vice* was the bankrupt, and entitled to the immunities guaranteed by the section. *In re Alpine Cotton Co.*, 131 Fed. Rep. 824; *In re Royce Dry Goods Co.*, 133 Fed. Rep. 100, 106.

The evidence was insufficient to justify the submission of any of the assignments of perjury, and it was error to deny the defendant's motion to take the case from the jury and for the direction of an acquittal.

*Mr. Assistant Attorney General Denison*, with whom *Mr. Francis H. McAdoo* was on the brief, for the United States:

Section 860, Rev. Stat., was repealed before the trial

and does not apply; but neither it nor § 7a–9 of the Bankruptcy Act gave any privilege against the use of the fact of self-contradiction as part of the proof of perjury.

Section 860 was repealed without a saving clause before petitioner's testimony was used against him, and therefore afforded no protection. *Balt. &c. R. R. Co.* v. *Grant,* 98 U. S. 398; *Ewell* v. *Daggs,* 108 U. S. 143, 150; *Hopt* v. *Utah,* 110 U. S. 574; *Kans. P. R. Co.* v. *Twombly,* 100 U. S. 78, 81; *McNulty* v. *Batty,* 10 How. 72; *Re Hall,* 167 U. S. 38; *South Carolina* v. *Gaillard,* 101 U. S. 433; *Wilkinson* v. *Nebraska,* 123 U. S. 286; Cf. *Legal Tender Cases,* 12 Wall. 457.

There is no such immunity.

The immunity granted by § 7a–9, of the Bankruptcy Act does not prevent the Government from using the bankrupt's testimony to prove other points of the charge than the mere text of the false statement itself. *Daniels* v. *United States,* 196 Fed. Rep. 459; *Edelstein* v. *United States,* 149 Fed. Rep. 636; *Glickstein* v. *United States,* 222 U. S. 139; *United States* v. *Brod,* 176 Fed. Rep. 165; Cf. *People* v. *Cahill,* 126 App. Div. (N. Y.) 391; *United States* v. *Smith,* 47 Fed. Rep. 501.

Nor does it prohibit the admission of testimony before the commissioner to sustain the charge before the referee, and *vice versa,* since both examinations were part of the same proceeding. *Powers* v. *United States,* 223 U. S. 303.

The evidence supported the verdict.

The examination by the commissioner as special examiner was duly authorized, and the false testimony there was perjury.

The decision of the Court of Appeals below is supported by the undisputed rulings under the acts of 1841 and 1867 and by the uniform practice under the present act until the contrary decision rendered in 1909, by the Court of Appeals for the Third Circuit, in *Skubinsky* v. *Bodek,* 172 Fed. Rep. 332, but see Judge Buffington's dissent, and see

also *Ex parte Bick*, 155 Fed. Rep. 908; *Ex parte Lee*, 15 Fed. Cas. 8,178; *In re Fixen*, 96 Fed. Rep. 749; *In re Fleischer*, 151 Fed. Rep. 81; *In re Salkey*, 21 Fed. Cas. 12, 252; *United States* v. *Wechsler*, 16 Am. B. R. 1; *United States* v. *Liberman*, 176 Fed. Rep. 161; 10 Columbia Law Rev. 70; 23 Harvard Law Rev. 221; Loveland, Bankruptcy (3d ed.), § 204.

Even under § 21a the examination was authorized, because the estate was in process of "administration" within the meaning of the section as soon as it came into the jurisdiction of the court by the filing of the petition, and certainly as soon as the receiver was appointed. *In re Fleischer*, 151 Fed. Rep. 81, *supra*.

Independently of § 21 (a), an examination of a bankrupt prior to adjudication is within the general equity powers of a bankruptcy court conferred by § 2 (15), and the concluding paragraph of the section. *Blake* v. *Francis-Valentine Co.*, 89 Fed. Rep. 691; *In re Cohen*, 136 Fed. Rep. 999; *In re Lacov*, 142 Fed. Rep. 960; *In re Levi and Klauber*, 142 Fed. Rep. 962; *In re Union Trust Co.*, 122 Fed. Rep. 937; *White* v. *Schloerb*, 178 U. S. 542.

This construction, being therefore possible, both under § 21 (a) and under the general equity power, should be accepted, because the other view leads to the result that no witnesses may be examined before adjudication, thus bringing to a standstill the powers of the bankruptcy courts and their representatives during the 20-day interval between the filing of the petition and the adjudication. See *Craddock-Terry Co.* v. *Kaufman*, 175 Fed. Rep. 303; *In re Fleischer*, 151 Fed. Rep. 81; *United States* v. *Liberman*, 176 Fed. Rep. 161. See also Sen. Rep. No. 502, 61st Cong., 2d Sess. on H. R. 16367 to repeal § 860, Rev. Stat.

MR. JUSTICE DAY delivered the opinion of the court.

This is a writ of certiorari to the Circuit Court of Appeals for the Second Circuit. The case concerns a prose-

cution commenced in the Circuit Court of the United States for the Southern District of New York by the finding of two indictments against the petitioner herein charging perjury in a bankruptcy proceeding. Upon trial the defendant, Cameron, was convicted and sentenced and upon writ of error the judgment of the Circuit Court was affirmed by the Circuit Court of Appeals. 192 Fed. Rep. 548.

The first indictment, after setting forth the proceedings in bankruptcy against the Knickerbocker Piano Company, of which the defendant was president and treasurer, alleged that he, upon inquiry under oath before a special examiner and commissioner, appointed under § 21a of the Bankruptcy Act, prior to adjudication, testified:

"First. That he, the said Albert B. Cameron, the aforesaid witness, shortly prior to the filing of the aforesaid petition in bankruptcy, against the said Knickerbocker Piano Company, had sold a number of pianos to William C. Smith, the petitioner in bankruptcy aforesaid.

"Second. That he, the said Albert B. Cameron, the witness aforesaid, had a conversation with the said William C. Smith, concerning the sale to him of pianos by him, the said Albert B. Cameron.

"Third. That he, the said Albert B. Cameron, the aforesaid witness, had sold to the said William C. Smith, eight pianos for the sum of six hundred and sixty-eight dollars."

And it alleged that the defendant thereby committed perjury.

By the second indictment the defendant is said to have committed perjury in a proceeding before the referee in testifying:

"First. That he, the said Albert B. Cameron, had not been able to obtain the address of the said William C. Smith and had never known the said address.

"Second. That he, the said Albert B. Cameron, had

had a conversation or conversations with the said William
C. Smith in regard to his, the said William C. Smith's
buying pianos of and from the said alleged bankrupt."

The two indictments were consolidated and, the defend-
ant pleading not guilty, trial was had and a verdict of
guilty returned upon which judgment was rendered.

The petitioner contends that the Bankruptcy Act does
not authorize the proceeding before the commissioner prior
to the adjudication. The record discloses that a receiver
had been duly appointed of the assets and effects of the
bankrupt and that he had applied to the court under
§ 21a of the Bankruptcy Act of 1898 for an order requiring
the bankrupt, its officers and directors, to appear before a
special examiner and commissioner to be examined con-
cerning the property of the bankrupt and the acts and
conduct of its officials. The court made the order re-
quested and appointed the special examiner and commis-
sioner, before whom Cameron appeared and testified, giv-
ing, in the course of his examination, the testimony charged
in the first indictment to be false. This proceeding was
prior to the adjudication in bankruptcy, which followed a
few days later. Whether the examination of Cameron
upon oath at that stage of the proceedings was authorized
by the Bankruptcy Act depends upon a construction of
clause *a*, § 21, of the act, which provides, in part, as fol-
lows:

"A court of bankruptcy may, upon application of any
officer, bankrupt, or creditor, by order require any desig-
nated person, including the bankrupt and his wife, to
appear in court or before a referee or the judge of any
state court, to be examined concerning the acts, conduct,
or property of a bankrupt whose estate is in process of
administration under this act."

The controversy is over the meaning of the phrase, "a
bankrupt whose estate is in process of administration
under this act." The construction of this provision dif-

fers in the Federal courts, some of them having held that
there can be no such examination until after adjudication,
as it is only then that the bankrupt can be subjected to
such proceeding.  Of this class are *Skubinsky* v. *Bodek,*
172 Fed. Rep. 332; *Podolin* v. *McGettigan,* 193 Fed. Rep.
1021; *In re Thompson,* 179 Fed. Rep. 874; *In re Davidson,*
158 Fed. Rep. 678; *In re Crenshaw,* 155 Fed. Rep. 271.
To the opposite view are *In re Fixen,* 96 Fed. Rep. 748; *In
re Fleischer,* 151 Fed. Rep. 81; *Ex parte Bick,* 155 Fed.
Rep. 908; *Wechsler* v. *United States,* 158 Fed. Rep. 579;
*United States* v. *Liberman,* 176 Fed. Rep. 161.  We are of
opinion that the estate was in process of administration at
the time when the examination before the commissioner
was ordered and the testimony of Cameron given.  This
court has decided that the filing of the petition in bank-
ruptcy operates to place the property of the alleged bank-
rupt *in custodia legis* and prevents any creditor from at-
taching it; and, although by the terms of the act the estate
does not vest in the trustee until the date of the adjudica-
tion, it is placed at the time of the filing of the petition
under the control of the court with a view to its ultimate
distribution among creditors.  *Acme Harvester Co.* v. *Beek-
man Lumber Co.,* 222 U. S. 300, 307; and see *Mueller* v.
*Nugent,* 184 U. S. 1, 14; *Everett* v. *Judson,* 228 U. S. 474,
478, 479.  And this is true; notwithstanding, as contended
by the petitioner, that should the attempt to obtain an
adjudication of bankruptcy fail upon the subsequent hear-
ings, the receivership would necessarily be vacated and
the property turned back to the alleged bankrupt.

    In order to arrive at the true meaning of § 21a other
provisions as well as the purpose of the act must be had
in view.  The object of the examination of the bankrupt
and other witnesses to show the condition of the estate is
to enable the court to discover its extent and whereabouts,
and to come into possession of it, that the rights of cred-
itors may be preserved.  If such examination is postponed

until after adjudication, which may not take place for at least twenty days, within which the bankrupt in involuntary bankruptcy is given leave to appear and plead, the estate may be concealed and disposed of and the purpose of the act to hold it and to distribute it for the benefit of creditors defeated. The importance of such early examination of bankrupts was emphasized in *In re Fleischer, supra.* By subdivision 9 of § 7 of the act, it is provided that the bankrupt shall, "when present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate." Here is found authority to examine the bankrupt at such other times than the first meeting of creditors as the court may direct. This section should be read with § 21a, and throws light upon its proper construction. In this case the petitioner had invoked the jurisdiction of the court, a receiver had been appointed to take possession of the property, the court was so far in possession of it as to prevent other courts from seizing it and thus defeating the bankruptcy jurisdiction. We are of opinion that the estate was then in process of administration and the examination ordered was within the jurisdiction of the court.

Other questions in the case relate to alleged violations of immunity afforded the defendant under statutes of the United States, which were invoked by him at the trial in the Circuit Court. Records were there offered in evidence showing the testimony given by Cameron before the examiner and before the referee. Cameron claimed that this testimony was incompetent for the purpose of establishing his guilt beyond showing that it was in fact given.

Counsel for petitioner relies upon the immunity clause of § 7 of the Bankruptcy Act, and upon § 860 of the Revised Statutes in force at the time the testimony was given but repealed by the act of May 7, 1910, c. 216, 36 Stat. 352. Section 7, subdivision 9, of the Bankruptcy Act, cited above, concludes, "but no testimony given by him shall be offered in evidence against him in any criminal proceeding." This section was before this court, so far as the immunity provided is concerned, in *Glickstein* v. *United States*, 222 U. S. 139, where it was held not to prevent a prosecution for perjury in the giving of testimony by a bankrupt, and the immunity was held to apply to past transactions concerning which the bankrupt might be examined. In the opinion in that case *Edelstein* v. *United States*, Circuit Court of Appeals for the Eighth Circuit, 149 Fed. Rep. 636, which had held that the words "any criminal proceeding" in which immunity is provided are limited to such criminal proceedings as arise out of the conduct of the bankrupt's business or the disposition of his property, etc., concerning which he may be examined, was cited with approval. In *Ensign* v. *Pennsylvania*, 227 U. S. 592, 600, it was held that full effect could be given to the immunity provision by confining it to the testimony given under subdivision 9, to which it was immediately subjoined. As the present prosecution was based upon alleged false swearing in the course of the bankruptcy proceedings, § 7 of the Bankruptcy Act can have no application.

Petitioner also invokes the protection of § 860 of the Revised Statutes, which reads:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any Court of the United States, in any criminal proceeding, or for the enforcement of any

penalty or forfeiture: *Provided,* That this section shall not
exempt any party or witness from prosecution and pun-
ishment for perjury committed in discovering or testifying
as aforesaid."

The Government contends that the subsequent repeal
of this section deprives the petitioner of the immunity
afforded. We cannot agree with this contention. It would
be subversive of principles of right and justice to give such
effect to a statute upon the protection of which the peti-
tioner had the right to rely at the time when called upon
to testify in the bankruptcy court and in consequence of
which he may be presumed to have given his testimony.
A retrospective operation of statutes is not to be given
except in clear cases unequivocally evidencing the legisla-
tive intent to that effect. *Union Pacific R. R. Co.* v.
*Laramie Stock Yards Co.,* 231 U. S. 190, 199, and previous
cases in this court cited in the opinion in that case. *Sum-
mers* v. *United States,* 231 U. S. 92. In the absence of a
clearly expressed legislative intent to the contrary the
court will presume that the law-making power is acting
for the future and does not intend to impair obligations
incurred or rights relied upon in the past conduct of men
when other legislation was in force. *White* v. *United
States,* 191 U. S. 545, 552.

The Circuit Court of Appeals in the instant case was of
opinion that the petitioner was entitled to the immunity
afforded in § 860 of the Revised Statutes, but failed to find
in the record any instance of its violation. Section 860 by
its express terms does not exempt a party from prosecution
for perjury committed in testifying in the instances named.
It was held in *Glickstein* v. *United States, supra,* of § 7 of
the Bankruptcy Act, that this immunity was not intended
to put a premium upon perjury by giving protection
against the use of the testimony in prosecutions for that
crime; and we cannot agree with petitioner's contention
that the use of such testimony is limited to proving that

it was in fact given. In prosecutions for perjury the statute saved the right to use such testimony for any legitimate purpose in establishing the charge made. While this is true, the statute by its terms protects the party from the use of such testimony in any court of the United States in any criminal proceeding.

The subsequent prosecution of Cameron for perjury in the two bankruptcy proceedings was a criminal proceeding in a court of the United States and the testimony given in the one bankruptcy proceeding, not tending to establish perjury in that proceeding, should not have been received to establish the crime charged in the other proceeding. In this case it will be noted from the statement already made, that the indictment based upon the testimony before the referee charged that Cameron falsely swore that he had not been able to obtain and had never known the address of William C. Smith, the man with whom it was charged the fraudulent transactions regarding the pianos were had. In the first indictment based upon the testimony before the commissioner, there is no such charge. The Government having put in evidence the proceedings before the referee showing that Cameron there testified that he did not know Smith's address and that he was not acquainted with his friends and that he did not know any one who knew him, the record of Cameron's testimony before the commissioner was offered in evidence, and, over specific objections calling attention to the lack of such charge in the first indictment based on the proceedings before the commissioner, the Government was permitted to read:

"'Q. Did you shortly prior to the filing of the petition sell some pianos and realize cash on them?

"'A. Yes, I did.

"'Q. To whom were they sold?

"'A. They were sold to W. C. Smith.

"'Q. Where is his place of business?

"'A. He is not in business.

"'Q. Who is he?

"'A. Why, an acquaintance of mine.

"'Q. Where does he live?

"'A. On St. Nicholas Avenue, I don't recall the address.

"'Q. What number?

"'A. I don't remember.

"'Q. Between what streets?

"'A. Above 125th.

"'Q. Is it an apartment or a private house?

"'A. Why, I think just a furnished room, or rooms.'

"Mr. McMANUS: I object to this as immaterial and not within the issues. There is no allegation in the indictment, or the assignment of perjury, as to the alleged address of William C. Smith, and in the proceedings before the Commissioner—

"Mr. SMITH: I am reading so the jury will get some sort of a comprehensive idea as to what the man testified to. This is the beginning of this alleged transaction with William C. Smith.

"The COURT: Cut it down closer.

"Mr. SMITH: I have cut it down to about two pages.

"Objection overruled.   Exception by defendant.

"Mr. SMITH (reading):

"'Q. How long have you known him?

"'A. Oh, three or four years.

"'Q. Do you know whether he is employed by anybody?

"'A. Yes, sir, but I don't know where.

"'Q. You haven't any idea in what capacity he is employed?

"'A. No.

"'Q. How often do you meet him?

"'A. Not very often.

"'Q. How often did you meet him before this last transaction?

"'A. Oh, two or three times.

"'Q. How long do you know him?

"'A. Three or four years, I think.'

"Mr. McManus: This is another line, subject to the last exception.

"'Q. Where did you first meet him?

"'A. New York.

"'Q. Where?

"'A. I don't recall that.

"'Q. Do you know anybody else other than yourself who knows Mr. Smith?

"'A. He has a number of friends.

"'Q. Do you know of anybody?

"'A. My brothers.

"'Q. Outside of your family?

"'A. No.

"'Q. Is he related to you?

"'A. No.

"'Q. Is he related to any member of your family?

"'A. No.

"'Q. Do you know how he can be located?

"'A. Why, yes, I could get hold of him.

"'Q. How could you get hold of him to-day?

"'A. I'd go and ask my brother.

"'Q. You think he could give you the address?

"'A. Yes, sir, I think so.

"'Q. Did you send to Mr. Smith to come to the place and buy some pianos?

"'A. I had to sell some pianos to get some money.

"'Q. Where did you send to get him?

"'A. I got him through my brother.'"

The effect of this testimony was to distinctly contradict the testimony which Cameron had given before the referee and which was the subject-matter of the indictment based on the proceedings before that officer. It did not tend to establish the charge growing out of his testimony before

the commissioner, which related solely to the sale of pianos and conversations between Cameron and Smith concerning the sales. The district attorney contended that this testimony was competent in order that the jury might get some sort of comprehensive idea as to what the man testified to, and, in view of that statement and the expressed view of the court that anything that threw light on the event was admissible, the testimony was admitted. It is contended that it was competent as showing the relations of Cameron to Smith and to identify Smith, but there was no question in the case as to who Smith was. He was a witness called to establish the charge of perjury and he was the person with whom it was charged the fraudulent dealings in pianos was had by the bankrupt. The testimony offered as to what Cameron swore to before the examiner, while not tending to establish the charge of perjury based upon testimony in that instance, did contradict the testimony which he had given before the referee, and directly tended to establish the charge under that indictment. We think to permit the use of the testimony for that purpose was to permit the testimony given in the one instance to be used in a criminal proceeding based upon testimony given in the other instance, and therefore to violate the immunity given in § 860 of the Revised Statutes, then in force.

Other errors are alleged, and it is contended that there was no adequate proof of the charges made, but these questions were submitted to the jury and cannot be reexamined here. We are of the opinion that error was committed in the use given to the testimony taken before the commissioner in the manner we have stated and for that reason the judgment of the Circuit Court of Appeals affirming the conviction of Cameron in the court below should be reversed.

*Reversed and remanded to the District Court of the United States for the Southern District of New York.*