## In re CONWAY.

### No. 7638.

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

See also D.C., 39 F.Supp. 172.

Mendon Morrill, of Paterson, N. J. (Cole & Morrill, of Paterson, N. J., on the brief), for appellants.

George Horowitz, of New York City, for appellee.

Before BIGGS, CLARK, and GOODRICH, Circuit Judges.

CLARK, Circuit Judge.

The court below reversed the referee in bankruptcy and from that reversal the creditors appeal to us. The ground of reversal is set forth in a paragraph of the learned district judge's order.[1] As there is no opinion, the question is nowhere else mentioned. The paragraph reads:

"Ordered, Adjudged and Decreed, that the hearing of the debtor held on October 8th, 1940, before Honorable Referee John Grimshaw, Jr., be and the same hereby is opened and reinstated for the purpose of *examining the debtor*, James Conway, in accordance with the provisions of Section 336 of the Chandler Act, Chapter XI. * * *" Appendix to appellant's brief, p. 26 (Italics ours).

Appellee-debtor had filed a petition under Chapter XI of the Bankruptcy Act[2] pray-

---

[1] Appendix to appellant's brief, p. 26.

[2] 11 U.S.C.A. §§ 701–799.

ing for an arrangement with his creditors. At the first meeting of creditors, the majority in number and amount rejected the debtor's proposed arrangement. Acting pursuant to Section 376(2)[3] the referee after a proper hearing decided that the best interests of creditors would be served by adjudicating the debtor a bankrupt and entered the appropriate order. The debtor objected to the order, urging that an order of adjudication could not be entered until a finding of the debtor's insolvency was made. Such a finding was impossible since the debtor was solvent in the bankruptcy sense,[4] although he admitted his inability to. pay his debts as they matured. The sole ground for the debtor's appeal from the referee's order was on the question of the necessity for a finding of insolvency. Yet, without reference to this ground of appeal the learned district judge vacated the referee's order because the debtor had not been examined.

The theory of the case as presented to the referee is based on a notion of bankruptcy that has been modified. The earlier United States statutes predicated the jurisdiction on acts of the bankrupt ensuing upon a technical financial condition. In the last decade the emphasis has been shifted from acts to conditions and from technicality to reality.[5] We, as well as our English brethren,[6] have come to realize the soundness of the civil law.[7] We are therefore using in parts of our bankruptcy Acts what the Code Napoleon calls the "cessation de paiements"[8] instead of the more difficult and less practical balance of assets over liabilities.[9] The new test first appears appropriately in the 1933 Act,[10] now Chapter XI. We say appropriately because the very purpose of this Act is to enable debtors to avoid the *stigma* of bankruptcy.[11] It is interesting to note that the Senator from our only civil law jurisdiction advocated this same change some fifty years ago. He said:

" * * * In the other class of failures

---

[3] 11 U.S.C.A. § 776(2).

[4] 11 U.S.C.A. § 1(9).

[5] See Treiman, Acts of Bankruptcy: A Medieval Concept in Modern Bankruptcy Law, 52 Harvard Law Review 189.

[6] Ringwood's Bankruptcy Law, 15th Ed., p. 21; first appeared in English Bankruptcy Act, 1883 (46 and 47 Vict., c. 52) s. 4, sub. s. 1(g); see Ex Parte Chinery (1884) 12 Q.B.D. 342; 2 Halsbury's Laws of England 32.

[7] German Law of Bankruptcy, Article 102; Italian Code of Commerce, Book 3, Article 856; Chilean Law of Bankruptcy, Title 4, Article 37.

[8] French Code de Commerce, Livre Troisieme, Des Faillites et Banqueroutes, Titre Premier, Article 437; Lyon-Caen and Renault, Traite de Droit Commercial, 4th Ed., Chapitre Premier, De La Declaration de Faillite: Conditions, Formes, Effets p. 56.

[9] In the leading French text book, the authors explain the reasoning of the civil law. They say:

"La loi a eu raison de ne pas subordonner la faillite a la condition de l'insolvabilite. Le fait qu'un commercant en paie pas suffit pour motiver l'intervention de la justice. Cela se justifie aisement. D'abord, on n'est jamais certain qu'un individu est solvable, puisqu'en l'absence d'une liquidation accompagnee de publicite, on ne peut connaitre exactement ni le montant de ses dettes ni ce que produiront ses biens; d'autre part, le debiteur, reste a la tete de ses affaires, peut prendre des measures desastreuses et les creanciers ont interest a surveiller l'administration de cet actif qui est leur gage. Du reste, le fait, pour des creanciers, de ne pas toucherajour fixe une somme sur laquelle ils etaient en droit de compter, cause souvent dans le commerce un prejudice presque aussi grand que le fait de ne jamais etre paye. * * * " Lyon-Caen and Renault, Traite de Droit Commercial, 4th Ed., Chapitre Premier, De La Declaration de Faillite: Conditions, Formes, Effets, p. 58.

"The law has had reason not to make bankruptcy depend upon insolvency. The fact that a merchant has not paid is enough to bring about the intervention of the courts. That is easily explainable. First, one is never certain that an individual is solvent since in the absence of liquidation accompanied by publicity one cannot know accurately either the amount of his debts or what his assets should produce. Secondly the debtor who remains in charge of his business can take desperate measures and so his creditors have an interest in supervising the administration of the assets which are their security. From the point of view of the creditors the fact that they cannot obtain on a certain day the sum on which they had a right to count as often does them as much harm in their business as the fact that they never may be paid." Translation.

[10] 11 U.S.C.A. § 202, sub. a.

[11] Senator Hastings of Delaware, in introducing the bill, said: "Mr. President, in all the sections under this chapter it is contemplated that those seeking the relief shall never bear the stigma of 'bankrupt',

arising chiefly in time of financial panic, or accident such as fire, wreck, etc., the suspension of payments may not arise from any inadequacy of assets but solely from inability to realize immediate cash. To destroy a business house and wreck the fortune of an upright and able business man, under such circumstances where he has an abundance of assets to meet every obligation, would seem an act of wantonness such as ought not to be tolerated under an enlightened system of jurisprudence. * * So, I think, as of the highest importance in a bankruptcy law, such provisions for reducing liabilities pro rata and for granting extensions of time of payments." Senator Ingalls of Louisiana, quoted in Warren, Bankruptcy in United States History p. 154.

It is not unreasonable to suppose that the distinguished Senator had knowledge of the laws of his own State and that the legislators thereof were similarly advised of the course of legislation in their own country of legal origin. At that very period, the French were discussing the establishment of their system of judicial liquidation. The introductory paragraph of a leading text writer on the subject, as translated, reads:

"We have already said that the law had become more lenient since 1889 for the merchant who was in a state of inability to meet his payments and who could not be accused of any serious negligence. The law of the 4th of March 1889 permitted him to avoid the more serious consequences of bankruptcy and placed himself simply in a state of judicial liquidation. That implies favorable treatment of insolvent debtors who because of unhappy circumstances only find themselves unable to meet their obligations." Translation, Bertrande, De La Faillite, Fourth Part, p. 237.[12]

█ In upholding this beneficent change in the law, the courts have only to follow a precedent very ancient indeed.[13] In the memorandum relative to the Bankruptcy Act of 1933 submitted by the Honorable Solicitor General, many other authorities are set forth and analyzed.[14] This a priori view has found acceptance in the later cases. They are collected in Chapter 8, Provisions for the Relief of Debtors, 11 U.S. C.A. § 201 et seq., p. 962 et seq., and most of them are cited by the learned referee. The appellee's personal disqualification might very well have been argued. His petition must be and is based on the very language of which he now complains.[15]

and in order to avoid it we have provided that they shall be referred to as 'debtors'. Indeed, these sections undertake to furnish relief for those who are not bankrupt, as that term has been defined under the old act. In all of these sections the person filing the application must allege one of two things, namely, that he is insolvent, which is the term used in the old law, but here is added another very important provision, 'or unable to meet his debts as they mature.' There are, therefore, two provisions. Insolvency means that he has not sufficient assets to pay his debts, while the other provision makes no such admission, but alleges that his financial condition is such that he can not meet his debts as they mature." 76 Cong. Rec. (Pt. V), p. 4877.

[12] "Nous avons deja dit que la loi etait devenue plus douce, depuis 1889, pour le commercant en etat de cessation de paiements auquel on n'avait a reprocher aucune negligence grave. La loi du 4 Mars 1889 permet de lui eviter les consequences rigoureuses de la faillite, et de le mettre simplement en etat de liquidation judiciaire. C'est un traitement de faveur pour le debiteur insolvable qu'un concours de circonstances malheureuses a, seul, mis dans l'impossibilite de tenir ses engagements." Bertrande, De La Faillite, Quatrieme Partie, p. 237.

[13] As long ago as 1872, Judge Longyear said: "From what has been said and written by early commentators, and by high authority, in regard to the power of Congress over bankruptcies, as well as from the nature of the subject itself, there is some ground for assuming that it extends to the regulation of all the relations of debtor and creditor, for the prevention of frauds and otherwise to the end of placing all creditors of the same debtor, not expressly preferred, upon one broad basis of equality, and of securing the honest appropriation of a debtor's property, not expressly exempted, to the payment of his debts, either with or without the commission of an act of bankruptcy, or whether bankruptcy was not in contemplation." United States v. Pusey, Fed.Cas.No.16,098.

[14] Sen. Rept. No. 1215 on H. R. 9968 and S. 3866, 72nd Cong., 2nd Sess., February 10, 1933, Exhibit A.

[15] "A petition filed under this chapter shall state that the debtor is insolvent or unable to pay his debts as they mature, and shall set forth the provisions of the arrangement proposed by him." 11 U.S. C.A. § 723.

Having asked for mercy, he can hardly be permitted to bite the hand from which it is dispensed. The ability to waive a constitutional provision intended for the protection of one's property rights is elementary.[16]

 We think the debtor is equally mistaken in his conception of the purpose of an examination. We do not stress the procedural point of whether an issue not before the referee may be raised in the district court. The rule is well-known.[17] It is especially emphasized in bankruptcy.[18] Even here it ceases to operate where prejudice can be shown.[19] It is exactly at this point that we part company with the appellee's counsel and the learned district judge. It is true that the statute is now mandatory when it used to be permissive.[20] That, of course, does not help the debtor unless he is given a right. Far from that being the fact, his burdens are made more onerous. The purpose of examinations under the bankruptcy act is conceded.[21] The permissive statute gave the examining official some discretion in refusing or acceding to a request.[22] The change to command removed the referee's discretion. It in no way altered the debtor's duty.[23] Here again the latter may be said to have waived his right even if he had one. He never requested any examination or made any other attempt to explain his financial affairs to his creditors. He cannot, therefore, be prejudiced by the withholding of a right he never had and, even if he had, clearly waived. By the same token, the failure to examine does not nullify the rejection of the creditors who felt they had all the information they needed and so did not ask for more.

The order of the district court is reversed and remanded for further proceedings in accordance with this opinion.

---

[16] 16 C.J.S., Constitutional Law, § 89 Estoppel or Waiver and cases cited.

[17] 2 Moore's Collier on Bankruptcy, 14th Ed., Para. 39.22; Review on Appeal in State Courts of Constitutional Questions Not Raised in the Trial Courts, 33 Columbia Law Review 692 (note); Sunderland, The Problem of Appellate Review, 5 Texas Law Review 126.

[18] 11 U.S.C.A. § 67, sub. c; see Thummess v. Von Hoffman, 3 Cir., 109 F.2d 291.

[19] 2 Moore's Collier on Bankruptcy, 14th Ed., Para. 39.22, p. 1490.

[20] 11 U.S.C.A. § 202, sub. d(1).

[21] Mr. Justice Day, in speaking for the United States Supreme Court, has explained it: " * * * The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." Cameron v. United States, 231 U.S. 710, 717, 34 S. Ct. 244, 246, 58 L.Ed. 448.

Other cases are cited in 2 Moore's Collier on Bankruptcy, 14th Ed., para. 21.05.

[22] 11 U.S.C.A. § 202, sub. d(1) and cases cited in notes thereto.

[23] The official commentator on the Chandler Act says:

"Some new duties have been imposed on the bankrupt and upon the officers, stockholders, etc., of a bankrupt corporation. Mandatory provisions require the attendance of the bankrupt for examination at creditors' meetings and at hearings on an application for discharge." Johnson, Commentary on the Chandler Bill or Revision of the Bankruptcy Act, 11 U.S.C.A.1940 Supp. to §§ 1–31, p. 5, 11.