**In re RECOTON CORPORATION, et al., Debtors.**

**No. 03–12180(ALG).**

United States Bankruptcy Court, S.D. New York.

April 13, 2004.

---

King & Spalding LLP, by George B. South, Scott E. Eckas, New York City, for the Official Committee of Unsecured Creditors.

Paul, Hastings, Janofsky & Walker LLP, by Albert M. Myers III, Stephen Z. Starr, New York City, for Former Officers and Directors Robert L. Borchardt, Stuart Mont, Arnold Kezsbom and Tracy Clark.

Stroock & Stroock & Lavan LLP, by A. Victor Glaser, New York City, for Debtors.

### *MEMORANDUM OF DECISION*

ALLAN L. GROPPER, Bankruptcy Judge.

#### I. Factual Background

Before the Court is a motion brought by the Official Committee of Unsecured Creditors in the above-captioned bankruptcy proceedings, dated March 1, 2004, pursuant to which the Committee seeks an order under §§ 1103 and 1109(b) of the Bankruptcy Code and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure authorizing the issuance of subpoenas for the production of documents and the oral examination of witnesses. The Motion is objected to by four former directors and officers of the Debtors, Robert L. Borchardt, Stuart Mont, Arnold Kezsbom and Tracy Clark (collectively, the "Former D & Os"), from whom discovery is sought.[1]

The facts relevant to the Motion are largely undisputed. The Debtors filed voluntary petitions for relief under the Bank-

---

1. The Debtors have not objected to the Motion.

ruptcy Code on April 8, 2003; the Committee was appointed on April 21, 2003. In or about June and July 2003, six complaints were filed in the United States District Court for the Middle District of Florida against certain of the Debtors' present and/or former officers and directors alleging violations, *inter alia,* of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. These actions were consolidated in September 2003; it appears that the Florida plaintiffs have recently been given leave to file a consolidated class action complaint.

Based upon interviews with former employees of the Debtors and the allegations contained in the original class action complaints, the Committee seeks discovery from fifteen individuals in order to determine whether potential claims exist against them or others in favor of the Debtors and their estates. The Former D & Os object to the Motion on four grounds, asserting that the Rule 2004 discovery: (i) is an impermissible attempt to obtain discovery relating to upcoming litigation certain to be brought by the Committee; (ii) is "vast, immediate, overbroad and hugely burdensome;" (iii) would deny them as defendants in the Florida securities class actions the protections of the Private Securities Litigation Reform Act of 1995 and the Securities Litigation Uniform Standards Act of 1998 by allowing the Committee to obtain discovery that should be stayed pending a decision on a motion to dismiss in the class action cases; and (iv) would circumvent the protections provided to Recoton and its board of directors under New York's demand rule in stockholder derivative actions.

## II. Discussion

### a. It is Appropriate for the Committee to Examine the Former D & Os Pursuant to Rule 2004.

 Fed. R. Bankr.P. 2004 allows the Court, on motion of any party in interest,

to order the examination of any entity, such examination to relate "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate ... [and in Chapter 11 cases to] any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr.P. 2004(b). The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred. See *In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y.1996). The scope of Rule 2004 examination is very broad, broader even than discovery under the Federal Rules of Civil Procedure. *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 711 (Bankr.S.D.N.Y.1991). Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation. See *Air Line Pilots Assoc., Int'l v. American Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.),* 156 B.R. 414, 432 (S.D.N.Y.1993). However, courts may limit, condition or forbid Rule 2004 discovery when it is designed to abuse or harass. *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr.E.D.Wis.1984). Rule 2004 examinations are also not generally permitted once an adversary proceeding has been filed, as the greater protections of the Bankruptcy Rules 7026 through 7037, which are modeled on Fed.R.Civ.P. 26–37, then apply. *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. at 711.

 The Committee is expressly authorized to investigate the acts, conduct, assets, liabilities and financial condition of the Debtors under § 1103 of the Bankruptcy Code. It has long been held proper

to examine a debtor's former officers to investigate potential causes of action against them. *In re Bush Terminal Co.,* 102 F.2d 471 (2d Cir.1939) (former Bankruptcy Act § 21a). The Rule 2004 discovery sought by the Committee is thus *prima facie* consistent with the Rule's above-stated purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims. The Committee also states unequivocally and convincingly that it has not decided whether or not to pursue litigation. The Former D & Os have not effectively countered the Committee's showing in this respect.[2] Nor is the Committee's Rule 2004 discovery unreasonable because there might be some overlap between the Florida class actions and issues raised in the bankruptcy proceedings. Although the Committee admits that the existence of the class actions might have been a factor in the decision to undertake an investigation, the Committee has agreed that all Rule 2004 discovery be subject to a protective order "prohibiting its use for any purpose whatsoever other than in connection with this bankruptcy proceeding and prohibiting its disclosure ... to the plaintiffs in the [Florida class actions]." (Committee's Motion, p. 4–5.) The Committee has represented that it seeks Rule 2004 discovery solely to obtain information on Committee (actually Debtor) claims, and the proposed protective order gives assurance that Rule 2004 discovery will not be used beyond the instant bankruptcy.

Moreover, there is no identity of subject matter between discovery in relation to the class action litigation pending in Florida and discovery in this bankruptcy proceeding. Possible claims of the Committee and/or the Debtors against their officers or directors would not be premised on the question whether there was fraud in connection with the sale of the stock of Recoton. Further, the Committee could assert only claims held by the Debtors themselves and their estates, and such claims would be brought for the ultimate benefit of the creditors, who appear to hold the residual interests in the estates (there being no distribution to stockholders under the Debtors' pending plan of reorganization). The class actions are, by contrast, brought on behalf of stockholders, not by creditors represented by the Committee.

The Former D & Os also object that the discovery sought by the Committee is excessive and overbroad. The document discovery certainly is broadly based. However, the Committee has stated that it seeks only those documents that are in the actual possession of the Former D & Os; unless the latter removed carloads of documents when they left the Debtors' employ, they are likely to have few documents to produce and may object to the specific document production requested when they actually respond to the Committee's demand. The Committee has also stated on the record of the hearing on this Motion that it will only schedule depositions, if necessary, after completing its document review, and that it is willing to work with the Former D & Os to relieve any administrative burdens. (Hearing Transcript, March 23, 2004, p. 19, lines 10–20.) In sum, it does not appear that the discovery sought by the Committee is on its face excessive or outside the purview of Rule 2004, nor does it appear that the discovery request is an attempt to harass the Former D & Os. Rather, on its face the Motion appears to be a legitimate attempt to investigate po-

---

**2.** For example, the Former D & Os do not admit that there are valid claims that could be brought against them by the Committee. Such an admission might render the Committee's investigation superfluous.

tential claims that might benefit the bankruptcy estates. Therefore, the Court finds that the Rule 2004 discovery requested by the Committee is *prima facie* appropriate.

### b. The Rule 2004 Discovery Request Does Not Circumvent Federal or New York State Securities Laws.

The Former D & Os further argue that allowing the discovery request would enable the Committee to circumvent the discovery stay under the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), as well as the demand rule in stockholder derivative actions under the New York Business Corporation Law ("NYBCL").

■■ Congress passed the PSLRA in 1997 in response to an increase in what it viewed as frivolous securities fraud lawsuits. *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir.2003). Specifically, the PSLRA was adopted to: (i) encourage the voluntary disclosure of information by corporate issuers; (ii) empower investors so that they may exercise primary control over private securities litigation; and (iii) encourage plaintiffs' lawyers to pursue valid claims and allow defendants to avoid abusive claims. *Cendant Capital I v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 196–97 (3d Cir.2001), citing S.Rep. No. 104–98, at 4 (1995), U.S.Code Cong. & Admin.News 1990, pp. 679, 683. The PSLRA includes an automatic stay of discovery in any private action arising under the Federal securities laws, whereby all discovery is stayed during the pendency of any motion to dismiss. 15 U.S.C. § 78u–4(b)(3)(B).[3] The rationale underlying the

stay is to prevent extensive discovery and the disruption of normal business activities until a court can determine, by ruling on a motion to dismiss, whether a filed suit has any merit. *Newby v. Enron Corp.*, 338 F.3d at 471.

■ SLUSA was enacted in 1998 to close a perceived gap in the PSLRA by preventing plaintiffs from evading the protections provided by Federal law by filing suit in State court. See *Newby v. Enron Corp.*, 338 F.3d at 471. SLUSA addressed this problem by preempting certain securities fraud class actions brought under State law and by granting the power to Federal courts to stay discovery in State court actions in aid of their jurisdiction. *Id.* SLUSA provides in relevant part: "Circumvention of stay of discovery. Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph." 15 U.S.C. § 78u–4(b)(3)(D).

■ The Former D & Os contend that PSLRA and SLUSA provide grounds for denying the Committee's requested discovery under Rule 2004. As a threshold matter, both PSLRA and SLUSA apply to suits that have in fact been commenced. No suit has been brought against the Debtors' officers and directors in the bankruptcy cases. Passing that issue, PSLRA by its express terms does not purport to apply to proceedings in bankruptcy. PSLRA provides for a mandatory stay of discovery in actions brought under the Federal securities laws. It does not

---

**3.** 15 U.S.C. § 78u–4(b)(3)(B) provides: "Stay of discovery. In any private action arising under this title [15 U.S.C. §§ 78a *et seq.*], all discovery and other proceedings shall be stayed during the pendency of any motion to

dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."

purport to govern proceedings in any other context.

█ SLUSA's stay of discovery is potentially broader, providing that "a court may stay discovery proceedings in any private action in a State court...." 15 U.S.C. § 78u–4(b)(3)(D). By its express terms, however, it applies only to actions in "State court," and the instant Chapter 11 cases are decidedly not pending in State court. It cannot be presumed that Congressional limitation of this provision to actions in State court was accidental. Congressional use of the term "State court" in the foregoing section of SLUSA (the section relied on by the Former D & Os) should be contrasted with another provision of SLUSA, which provides for Federal preemption of any "covered class action based upon the statutory or common law of any State or subdivision thereof ... in any State or Federal court by any private party alleging—(A) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77(p)(b).[4] This preemption provision does apply to actions pending in Federal court.

█ But this part of SLUSA only preempts "*certain types* of securities class actions..." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 332 F.3d 116, 123 (2d Cir.2003) (emphasis in original); see also, *Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101 (2d Cir. 2001). In order to determine whether an action is preempted, it is necessary to parse the plaintiffs' claims to determine whether a material omission or deceptive device in connection with the purchase or sale of a covered security "is a necessary component of the claim." See *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,* No. 02–Civ. 9149, 2004 WL 435058, at *1, 5, 2004 U.S. Dist. LEXIS 3703, at *13, 22 (S.D.N.Y. March 9, 2004). A material omission or deceptive device in connection with the purchase or sale of securities is not required in order for a debtor to have claims against its officers and directors. Moreover, here, the Committee, which represents only creditors (and no shareholders), cannot pursue claims based upon the purchase and sale of stock by individual shareholders. A trustee in bankruptcy, and by extension a committee, does not have standing to pursue claims held by creditors individually, much less shareholders individually. See *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 428–29, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 696–700 (2d Cir.1989).

---

4. "Covered class action" is defined as:
 (i) any single lawsuit in which—
 (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
 (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or
 (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—
 (I) damages are sought on behalf of more than 50 persons; and
 (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.
15 U.S.C. § 77(p)(f)(2).

The discovery being sought by the Committee is thus in connection with potential claims for relief that are not premised on the securities laws and not covered by SLUSA. Moreover, as noted above, the Committee has agreed that all disclosure will be kept confidential and will not be made available to the class action plaintiffs. (Committee's Response, p. 8; Hearing Transcript, March 23, 2004, p. 4, lines 18–21.) There is thus no basis to apply SLUSA to limit the right of a representative of a bankruptcy estate to investigate potential claims of a debtor, including claims for breach of fiduciary duty.

It is commonplace for securities fraud actions to be pending against the officers and directors of a debtor that is concurrently in a case under the Bankruptcy Code. The investigation that a debtor or creditors committee may conduct pursuant to Rule 2004 may be an essential element in the formulation of a Chapter 11 plan or in a Chapter 7 trustee's ability to make any distribution to creditors. It would seriously delay and disrupt the administration of bankruptcy cases if the happenstance of a pending securities action gave the defendants in that suit the ability to impede investigations that the debtor or committee may appropriately conduct. Rule 2004 derives from § 21a of the Bankruptcy Act of 1898, 11 U.S.C. § 44(a) (repealed), and former Rule 205 which superceded § 21a. Cases have long emphasized the importance and breadth of the examination rights afforded to a bankruptcy estate representative, so that "the rights of creditors may be preserved." *Cameron v. United States*, 231 U.S. 710, 717–18, 34 S.Ct. 244, 58 L.Ed. 448 (1914); see also, *In re Samuels*, 215 F. 845, 850 (2d Cir.1914) ("a searching and summary method for the discovery of hidden assets"). There is no indication in the "plain language" or in the stated purposes of SLUSA that it was intended to affect the longstanding right of an estate representative to conduct discovery under what is now Rule 2004, or that a representative's investigation, designed in the first instance to benefit creditors, should be delayed because of the pendency of shareholders' litigation.

The Former D & Os also cite *In re DPL Inc., Sec. Litig.*, 247 F.Supp.2d 946 (S.D.Ohio 2003), a non-bankruptcy case, in support of the proposition that State court derivative claims, which are admittedly similar to the type of claims that could be brought on behalf of an estate, are potentially subject to SLUSA's discovery stay. In *DPL*, the District Court sustained a motion to stay discovery in four derivative State actions arising out of the same fact scenario as six consolidated Federal securities actions before it. The issues before the *DPL* court did not involve the duties of a debtor and a committee to investigate causes of action on behalf of an estate, or a specific rule (Bankruptcy Rule 2004) that permitted discovery in connection therewith. Moreover, the *DPL* court emphasized that the State court plaintiffs anticipated sharing discovery obtained in the State court actions with counsel for class in the Federal actions, with the result that the stay of discovery under PSLRA would be circumvented if discovery were not stayed in State court. In the instant case, Rule 2004 discovery will be subject to a protective order and will not be shared with counsel in the Florida class action suits.

Additionally, the Court in *In re DPL*, 247 F.Supp.2d at 950, acknowledged that discovery in a State court action could be stayed only upon the "proper showing" required by SLUSA. 15 U.S.C. § 78u–4(b)(3)(D). Citing *Lapicola v. Alternative Dual Fuels, Inc.*, 2002 WL 531545, at *1, 2002 U.S. Dist. LEXIS 5941, at *5 (N.D.Tex.2002), it stated that a proper showing would include evidence that a stay

was necessary to protect important PSLRA interests, including: "(1) to prevent the imposition of any unreasonable burden on a defendant before disposition of a motion to dismiss; and (2) to avoid the situation in which a plaintiff sues without possessing the requisite information to meet the heightened pleading requirements of the PSLRA, then uses discovery to acquire that information and resuscitate a complaint that is otherwise subject to dismissal." *In re DPL*, 247 F.Supp.2d at 950–51. With regard to the first interest, as previously discussed, the policy in favor of Rule 2004 discovery easily outweighs the burden on the Former D & Os and, in the event that discovery becomes overly burdensome, the Former D & Os may object to specific discovery demands. Nor will discovery disrupt the Debtors' business since, by their own admission, the Former D & Os are no longer employed by the Debtors. (Objection, p. 2.) With regard to the second showing above, disclosure under Rule 2004 will be subject to a protective order and will not impact the securities litigation.

The Former D & Os also cite *In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y.2002), for the proposition that Rule 2004 discovery may be stayed where such discovery is designed to bypass PSLRA's stay in a pending securities class action suit. In *Enron* the lead plaintiff in a securities class action requested access to materials previously obtained by the Enron creditors committee under Rule 2004. This Court denied the lead plaintiff's request for the discovery materials, finding that the requested discovery was intended for use in the pending class actions and that the plaintiff had neither

alleged nor substantiated the proposition that the materials sought were properly discoverable in the context of a Bankruptcy Rule 2004 examination. *Id.* at 842, 844. *Enron* is distinguishable in that, as discussed above, the discovery sought here relates to potential claims in the bankruptcy cases and is consistent with the purposes of Rule 2004. Furthermore, the Committee has satisfied this Court that the Rule 2004 discovery, which will be subject to a protective order, is not an effort to circumvent the PSLRA and will not impact the Florida class actions.

Additionally, there is no basis for defendants to invoke § 626(c) of the New York Business Corporation Law, which requires a prospective plaintiff to make a demand on a corporation's board of directors prior to initiating a shareholder derivative action.[5] It has never been suggested that a trustee in bankruptcy, as the representative of the estate, or the debtor in possession, as the Chapter 11 representative of the estate with the powers of a trustee, has a duty to make a demand on the debtor's board before investigating a claim or pursuing it. As the Second Circuit recently said, quoting a case from the Ninth Circuit Bankruptcy Appellate Panel, "[t]he [debtor in possession] has an obligation to pursue all actions that are in the best interests of creditors and the estate." *In re Commodore Int'l Ltd.*, 262 F.3d 96, 99 (2d Cir.2001), quoting *In re Spaulding Composites Co.*, 207 B.R. 899, 904 (9th Cir. BAP 1997); see also, *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1362–63 (5th Cir.1986). This obligation cannot properly be thwarted by the debtor's board of directors. As a practical matter, in many Chapter 11 cases, it may

---

**5.** The Former D & Os state that New York law governs in this instance since Recoton is a New York corporation, although requiring a demand before a shareholder derivative suit

can be brought is common to many jurisdictions. *Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir.1980); see also, Fed.R.Civ.P. 23.1.

not be feasible for a debtor in possession to conduct an investigation into the activities of its own board or bring suit against board members, either present or past. Under such circumstances, *Commodore Int'l* teaches that "[a]llowing the [debtor in possession] to coordinate litigation responsibilities with an unsecured creditors' committee can be an effective method for the [debtor in possession] to manage the estate and fulfill its duties." *Id.* at 99, again quoting *Spaulding Composites Co.*

 The demand requirement in State corporation law is generally designed to weed out unnecessary and illegitimate shareholder derivative suits and to give those in control of the corporation—the directors—the opportunity to redress a matter before an individual shareholder can purport to exercise the powers of the corporation. *Marx v. Akers,* 88 N.Y.2d 189, 644 N.Y.S.2d 121, 666 N.E.2d 1034 (N.Y.1996). By contrast, in bankruptcy, there exists an entirely separate set of controls. As indicated in *Commodore Int'l,* if a debtor unjustifiably refuses to pursue a claim, a committee may be authorized to conduct an investigation of the debtor's activities and to take any necessary actions to redress past wrongs. See also, *In re STN Enters.,* 779 F.2d 901, 904 (2d Cir.1985); *Glinka v. Murad (In re Housecraft Industries USA, Inc.),* 310 F.3d 64 (2d Cir.2002); *cf. In re The Gibson Group, Inc.,* 66 F.3d 1436, 1443 (6th Cir. 1995). *Commodore* further holds that "a creditors' committee may sue on behalf of the debtors, with the approval and supervision of a bankruptcy court, not only where the debtor in possession unreasonably fails to bring suit on its claims, but also where the trustee or debtor in possession consents. In the latter situation, however, suit by the creditors committee must be necessary and beneficial to the resolution

of the bankruptcy proceedings." *Commodore Int'l,* 262 F.3d at 100; see also, *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,* 330 F.3d 548 (3d Cir.2003) (en banc). In any event, under Chapter 11, if the issues are to be taken out of the hands of the debtor in possession (including its board), a court order is required, and a committee has to seek additional authority from the debtor and from the court in order to be authorized to conduct formal discovery or pursue claims of the debtor against its directors and officers. The foregoing provides ample protection to potential defendants, to the corporation and to all those interested in its estate, and certainly obviates any reason for making a demand before bringing an action—or, as here, performing an investigation.[6]

Finally, § 626 of the NYBCL governs an action that "may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor, by a holder of shares or of voting trust certificates of the corporation or of a beneficial interest in such shares or certificates." The Committee's investigation does not contemplate an action "by a holder of shares or of voting trust certificates of the corporation or of a beneficial interest in such shares or certificates."

### III. Conclusion

The objections to the requested Rule 2004 discovery are overruled. As a final matter, the Court also declines the Former D & Os' suggestion that it stay its order pending a motion by the Former D & Os to withdraw the reference to the District Court. Withdrawal of the reference and any related relief are matters that should be addressed to the District Court. The Committee shall settle an order on three

---

6. As previously indicated, the Debtors have not objected to the Motion.

days' notice consistent with this Memorandum Decision.