**UNITED STATES of America**

v.

**Hermann SCHAIER, Defendant.**

United States District Court
S. D. New York.
July 2, 1959.

S. Hazard Gillespie, Jr., U. S. Atty., Southern District of New York, New York City, for the United States. John C. Lankenau, Asst. U. S. Atty., New York City, of counsel.

Spar, Schlem & Burroughs, New York City, for defendant. Leon B. Savetsky, New York City, of counsel.

DIMOCK, District Judge.

Defendant moves to dismiss count 2 of the indictment as failing to state a crime. That count charges that defendant, an employee of the Immigration Service, solicited additional fees "in a proceeding relating to naturalization, citizenship and the registry of aliens, to wit applications of one Paul Melamed, and his wife Danitza Melamed for the adjustment and change of their non-immigrant status in the United States to permanent resident status". The count cites section 1422 of title 18 U.S.Code.

Defendant says that an adjustment-of-status proceeding is not one relating to naturalization or to citizenship or to the registry of aliens within the meaning of those words as used in section 1422. I hold that it is one relating to the registry of aliens within the meaning of that section.

Section 1422 of title 18 U.S.Code was adopted on June 25, 1948, and still reads in its original form as follows:

"Whoever knowingly demands, charges, solicits, collects, or receives, or agrees to charge, solicit, collect, or receive any other or additional fees or moneys in proceedings relating to naturalization or citizenship or the registry of aliens beyond the fees and moneys authorized by law, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

When section 1422 was adopted there was a provision for the registry of aliens in section 328 of the Nationality Act of 1940, 54 Stat. 1151–1152, 8 U.S.C. § 728, which is quoted in the margin.* Subsec-

---

* "Sec. 328.    (a) The Commissioner shall cause to be made, for use in comply- ing with the requirements of this chapter, a registry of each person arriving

tion (a) of said section 328 required the Commissioner of Immigration to make "a registry" of each person arriving in the United States after January 13, 1941, the effective date of the Nationality Act of 1940. Subsection (b) provided that, under certain conditions, such registry might be made of aliens who entered the United States prior to July 1, 1924, which was the effective date of the quota system. Subsection (c) declared: "For the purposes of the immigration laws * * an alien, in respect of whom a record of registry has been made as authorized by this section, shall be deemed to have been lawfully admitted to the United States for permanent residence as of the date of such alien's entry."

There can be no doubt that proceedings taken to obtain registry of pre-quota immigrant aliens who had entered the United States prior to July 1, 1924, would have been proceedings "relating to * * the registry of aliens" within the terms of section 1422 under which defendant is charged.

Defendant argues that the expression "registry of aliens" in section 1422, instead of being intended to refer to "registry" under section 328 of the Nationality Act of 1940, was intended to refer to the compulsory "registration" of all aliens required by the Act of June 28, 1940, ch. 439, title III, sections 30–39 inclusive, 54 Stat. 673–676, amended by Act of October 13, 1941, ch. 432, 55 Stat. 736, 8 U.S.C. 1946 Ed. §§ 451–460. This not

only ignores the difference in the terms "registry" and "registration" but ignores the fact that there was no such thing as a proceeding for the compulsory registration of aliens so that section 1422 so construed would have had no field to work in. The argument is without substance.

In the McCarran-Walter Act of 1952 provision was made for proceedings for adjustment of status such as those in which defendant is alleged to have acted. Our problem is to decide whether these, like proceedings to obtain registry of pre-quota immigrants, are proceedings "relating to * * * the registry of aliens" for the purposes of the criminal section 1422.

The provision for adjustment-of-status proceedings is found in section 245 of the McCarran-Walter Act, 66 Stat. 217, 8 U.S.C. § 1255. It provides for the adjustment of the status of an alien lawfully admitted as a non-immigrant to that of an alien lawfully admitted for permanent residence. Subdivision (b) of that section provides that "the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made".

The McCarran-Walter Act, by section 240, 66 Stat. 204, 8 U.S.C. § 1230, substituted for subsection (a) of section 328 of the Nationality Act of 1940, a provision that the Attorney General, rather

---

in the United States after the effective date of this Act, of the name, age, occupation, personal description (including height, complexion, color of hair and eyes, and fingerprints), the date and place of birth, nationality, the last residence, the intended place of residence in the United States, the date and place of arrival of said person, and the name of vessel or other means of transportation, upon which said person arrived.

"(b) Registry of aliens at ports of entry required by subsection (a) of this section may be made as to any alien not ineligible to citizenship in whose case there is no record of admission for permanent residence, if such alien shall make a satisfactory showing to the Commissioner, in accordance with regulations

prescribed by the Commissioner, with the approval of the Attorney General, that such alien—

"(1) Entered the United States prior to July 1, 1924;

"(2) Has resided in the United States continuously since such entry;

"(3) Is a person of good moral character; and

"(4) Is not subject to deportation.

"(c) For the purposes of the immigration laws and naturalization laws an alien, in respect of whom a record of registry has been made as authorized by this section, shall be deemed to have been lawfully admitted to the United States for permanent residence as of the date of such alien's entry."

than the Commissioner of Immigration, should cause to be filed "as a record of admission" the immigrant visa surrendered by the arriving alien. The word "registry" was no longer used. The filed immigrant visa, which by its terms fixes the immigrant's status, took its place as a "record".

Similarly section 249 of the McCarran-Walter Act, 66 Stat. 219, 8 U.S.C. § 1259, which took the place of subsection (b) of section 328 of the Nationality Act of 1940, permits the Attorney General to make a "record" of lawful admission for pre-quota immigrants. Here the making of a record was necessary since there would be no immigrant visa to serve as one.

In a case where there was a newly permitted adjustment of status under the new section 245 of the McCarran-Walter Act there was similarly no immigrant visa so the adjustment-of-status section provided in subdivision (b) that the Attorney General should *record* the alien's lawful admission for permanent residence.

In spite of these changes of the word "registry" to "record" in the McCarran-Walter Act, the criminal provision, section 1422 of title 18, was left unchanged and the crime that it defines is still defined as soliciting additional fees in proceedings relating to "the registry of aliens".

■ As stated above, there can be no doubt that, where, under section 328 of the Nationality Act of 1940, a proceeding for the "registry" of pre-quota immigrants was provided for, that proceeding was one relating to "the registry of aliens" within the criminal section 1422. Nor can there be doubt that, when the proceeding was changed by the McCarran-Walter Act to one for the "record" of pre-quota immigrants, the proceeding was one relating to "the registry of aliens" despite the change of name. In sections 240 and 249 of the McCarran-Walter Act the word "record" was used as the equivalent of "registry". The word "record" is used in precisely the same context in section 245, the change-of-status section of the McCarran-Walter Act. It must there too be the equivalent of "registry" for the purposes of the criminal section 1422 which makes it a crime to solicit additional fees in proceedings relating to the "registry" of aliens. The adjustment-of-status proceedings which in terms relate to the "record" of aliens are, for the purposes of section 1422, proceedings relating to the "registry of aliens".

The motion to dismiss count 2 is denied.

■ Defendant moves to dismiss count 4 of the indictment as failing to state a crime. That count charges that defendant, on or about December 31, 1958, swore falsely before the grand jury. It is alleged that the grand jury was conducting an investigation pertaining to possible violations of title 18 U.S.Code, sections 202, 281, 283, 284, 1001, 1422, 1503, 1504, 1505 and 1914. It is further alleged that it was material to the Grand Jury investigation to determine whether Schaier had "suggested and told" Paul Melamed to make false statements to the Federal Bureau of Investigation with respect to a payment received by Schaier from Melamed in December of 1957 and with respect to the relationship of Schaier to the Melameds' applications before the Immigration Service for adjustment of status, and that with respect to this material matter Schaier testified as follows:

"Q. In your conversation with Melamed at your home, did you suggest to Melamed false statements which he should give to the FBI with respect to the December '57 payment and your relationship to his application for adjustment of status? A. Definitely not.

"Q. You're absolutely sure of that? A. I am absolutely sure of that.

"Q. You in no way suggested— A. I in no way suggested to make any false statements.

\* \* \* \* \* \*

"Q. Did you have a conversation in your office with Mr. Melamed prior to the meeting in Connecticut at which you told him to give false statements to the FBI? A. I told him never at no place, neither in Connecticut, nor in my office, nor any other place, ever to give false statements to the FBI or any other person or agency. I never told him to give false statements—period."

■ Defendant contends that it was not sufficiently alleged that the defendant stated a "material matter" within the terms of the perjury statute, section 1621 of title 18 U.S.Code. It is said that it was not enough to state (a) that it was material to determine whether defendant had suggested and told Melamed to make false statements to the FBI with respect to a payment received by defendant and with respect to the relationship of defendant to the applications before the Immigration and Naturalization Service and (b) that defendant's testimony was "as to the aforementioned material matter". A case is cited, United States v. Laut, D.C.S.D.N.Y., 17 F.R.D. 31, 35, as holding that "the facts set forth as falsely * * * sworn to" should be sufficient in themselves to show materiality. That cannot mean that a valid indictment cannot be found unless the allegedly false statement, in and of itself, demonstrates its materiality. The defendant may be convicted even though he did not know that his false statement was material. United States v. Alu, 2 Cir., 246 F.2d 29, 32; United States v. McGovern, 2 Cir., 60 F.2d 880, 889, certiorari denied 287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 561. In such a case his false statement could not show its own materiality; the speaker could tell only what he knew and, by hypothesis, he would not know that the statement was material. The allegation of falsity would have to be supplemented by allegations of materiality or of facts demonstrating materiality. Here we have both.

Defendant says that a mere description of the purpose of the grand jury inquiry plus a bare conclusory statement that defendant's statements were material to that purpose is not enough. There seems to be no decision on the point in this circuit but no decision supporting defendant's position has been found and there are many which sustain the bare conclusory statement as proper pleading. Bilderback v. United States, 5 Cir., 249 F.2d 271, 273, certiorari denied 356 U.S. 946, 78 S.Ct. 793, 2 L.Ed.2d 820; Travis v. United States, 10 Cir., 123 F.2d 268, 270; United States v. Allen, D.C.E.D. Mich., 131 F.Supp. 323, 326; United States v. Kennefick, D.C.N.D.Ill., 144 F. Supp. 596, 598.

Count 4 would thus sufficiently allege materiality if it did no more than describe the purpose of the grand jury's inquiry and say that defendant's testimony was material. The count does much more, though. The indictment alleges, by referring to section 1001 of title 18, that the grand jury was investigating whether false statements to a department or agency of the United States had been made and, by referring to sections 1503, 1504 and 1505 of title 18, whether there had been an obstruction of justice.

Certainly the question of whether Schaier had caused one Melamed to lie to the FBI about a payment received by defendant and about defendant's relationship to the application before the Immigration Service, a matter which was then being investigated by the grand jury, would be material to a violation of these sections.

In addition, had defendant testified truthfully that he had told Melamed to lie to the FBI as to defendant's relationship to Melamed's application for adjustment of status, this testimony could have been evidence of consciousness of guilt of the commission of the other crimes then under investigation by the grand jury such as bribery, (indicated by the reference to section 202 of title 18), conflict of interest (indicated by the reference to sections 281, 283 and 284 of title 18) and the receipt of unauthorized fees in an immigration, naturalization or registry proceeding (indicated by the reference to section 1422 of title 18).

Materiality is thus abundantly alleged in count 4.

■ Defendant moves to dismiss count 4 on the further ground that it is vague and indefinite in two respects: (1) The questions quoted lack any specific reference to the subject matter with respect to which the said "false statement relates or pertains" and, (2) the word "suggest", used in the quoted question of the Government attorney, is vague and indefinite. As stated in the above discussion of defendant's claim that the materiality of defendant's statements was not sufficiently alleged, the indictment states that defendant's testimony was "with respect to the aforementioned material matter" and the "aforementioned material matter" was a question whether defendant had suggested and told Melamed to make false statements to the FBI with respect to a payment received by defendant and with respect to the relationship of defendant to the applications before the Immigration and Naturalization Service. This is certainly specific reference to the subject matter with respect to which the false statements are alleged to pertain.

If this were not enough, however, the specific reference is supplied by the first question quoted in the indictment: "In your conversation with Melamed at your home, did you suggest to Melamed false statements which he should give to the FBI with respect to the December '57 payment and your relationship to his application for adjustment of status?". Here was intrinsic evidence that the question related to the subject matter which was stated in the indictment to be "whether the said Hermann Schaier, had suggested and told one Paul Melamed to make false statements to the Federal Bureau of Investigation, United States Department of Justice (FBI) with respect to a payment received by the said Hermann Schaier, from the said Paul Melamed in December of 1957 and with respect to the relationship of the said Hermann Schaier to the applications before the Immigration and Naturalization Service."

Defendant argues that the phrase "with respect to" used in the quoted question is of "such a general nature that it cannot be ascertained therefrom what the specific subject matter of the question was". Certainly there could have been no criticism if the question had been "about" the December '57 payment. I cannot see that "with respect to", though stilted, is any less definite.

Defendant's contention that the word "suggest" as used in the questions asked defendant is vague and indefinite is also without substance. The question began, "In your conversation with Melamed at your home, did you suggest to Melamed false statements which he should give to the FBI * * * ?" Only the most captious reader would construe this as anything but a question whether defendant suggested false statements to Melamed and suggested that he should give them to the FBI. Defendant cites dictionary definitions of "suggest" and says that it is apparent that the meaning of the term is completely dependent upon the subjective state of mind of the person using it. This is the equivalent of saying that no one can tell what "suggest" means without knowing the subjective state of mind of the speaker. I have some doubt as to whether it is necessary to know the subjective state of mind of a speaker who says "I suggest that we go to the theatre tonight". The question put to defendant seems to me to have been no more difficult to understand. If there were anything dubious about the meaning of the words it was certainly eliminated by the first part of the question which began "In your conversation". A suggestion in a conversation is a suggestion in words. Moreover, as if to anticipate a claim that the word might be understood in some sense other than communication by speech, the questioner went on and asked "You in no way suggested" and received the answer "I in no way suggested to make any false statements". We thus have defendant's statement that in none of the ways in which a suggestion could be conveyed was a suggestion so conveyed by him.

844

The motion to dismiss count 4 is denied.

■ Defendant moves to dismiss count 6 on the ground of failure to show materiality. That count contains a quotation of questions and answers alleged to have been given before the grand jury. Only one of the answers is alleged to have been false. That one reads as follows:

"Q. It's your testimony, sir, that at no time did you ever tell Melamed what story he should give to the FBI other than the truth? A. Exactly."

It is then charged that defendant "then and there well knew and believed that the aforesaid testimony was not true in that he had told Paul Melamed to tell a story other than the truth to the said FBI". It is alleged in the count, in the same form as in count 4, that it was material to the grand jury's investigation to ascertain whether during the investigation by the FBI defendant had told one Paul Melamed "to tell a story other than the truth to the said FBI." There is thus a conclusory allegation that the statement alleged to be false was material.

The allegations of count 6 are much weaker in this respect than those of count 4. By reference to count 5, count 6 alleges that the grand jury was investigating possible violations of title 18 U.S. Code sections 202, 281, 283, 284, 1001, 1422, 1503, 1504, 1505 and 1914. It is then alleged that it was material to this investigation to ascertain whether, during an investigation by the FBI, defendant "had told one Paul Melamed to tell a story other than the truth to the said FBI." Then the count quotes defendant's alleged testimony that he never "told Melamed what story he should give to the FBI other than the truth". Finally it is charged that the testimony was not true "in that he had told Paul Melamed to tell a story other than the truth to the said FBI." Count 4, in alleging that it was material to determine whether defendant had suggested that Melamed make false statements to the FBI, limited those statements to a certain subject matter and, in alleging defendant's de-nial of the making of such statements, alleged denials again limited to the same subject matter. Here count 6 alleged that it was material to determine whether defendant had told Melamed to make a false statement to the FBI, without specification of subject matter and, in alleging denial by defendant of the making of such a statement, again alleged a denial without specification of subject matter. It is hard to believe that every false story would have been material to even the broadest investigation by a grand jury. It strains the liberality of the doctrine that materiality can be alleged generally to sustain count 6. Nevertheless, with some reluctance, I hold that it is saved by the characterization of the grand jury's investigation as one pertaining to violations of enumerated sections of the criminal statutes. By implication, the subject matter of Melamed's statements which were the subject of the inquiry is limited to the field of those criminal statutes. It was material to the grand jury's investigation to ascertain whether defendant had told Melamed to tell to the FBI a story other than the truth within the subject matter of those statutes. If defendant, as alleged, falsely said that he at no time ever told Melamed to tell to the FBI a story other than the truth, his false statement was material.

The motion to dismiss count 6 is denied.

Defendant moved for a bill of particulars. Counsel on both sides agreed on the particulars to be furnished with the exception of item 1(d), which reads as follows:

"The nature and extent of the services which the prosecution will claim were rendered by the defendant, and the time and place at which the prosecution will claim that the defendant rendered the said services;"

Upon the argument I directed that these particulars be furnished with the exception of the place at which prosecution will claim that defendant rendered the services.

Defendant also moved that the Government be required to furnish defendant with a copy of defendant's testimony before the grand jury. Upon the argument of the motion the Government agreed to do so.

Settle order on notice.