UNITED STATES of America, Plaintiff,

v.

Frank COBERT, Defendant.

No. 33101 CD.

United States District Court
S. D. California,
Central Division.

March 20, 1964.

Francis C. Whelan, U. S. Atty., by Benjamin S. Farber, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Morton Galane, Las Vegas, Nev., David H. Cannon, Glendale, Cal., for defendant.

BYRNE, District Judge.

On January 8, 1964, the United States of America, plaintiff, filed an indictment against Frank Cobert, defendant. The indictment alleges that on or about February 28, 1963, within the Southern District of California, defendant took an oath before the Grand Jury which was duly impaneled, and sitting in the said District, and was inquiring into an unspecified matter then before it. It is then alleged that the defendant swore that he would testify truly, and that contrary to that oath he stated "material matter" which he did not believe to be true in that he testified as follows:

"Q. Hy Kamin isn't just a *listing post* there at the pay phone *taking action* and *turning some of it over to you?*

"A. No.

"Q. You know nothing about the *situation?*

"A. No. I would be tickled if he did if I wanted the action. In other words, the kind of action that Hy and I would bet jointly, I wouldn't want if it was hot.

"Q. You certainly wouldn't want any part of any action made by Hy Kamin when he stays by the telephone and gets telephone bets from people and then *turns it over to you?*

"A. Certainly not.

"Q. In fact, if you were a party to such a thing, you could lose your license?

"A. Yes.

"Q. To your knowledge such *a thing* is not taking place?

"A. To my knowledge.

"Q. Between you and Hy Kamin has there ever been any discussion about *lay-offs*?

"A. About lay-offs?

"Q. Yes, sir.

"A. No. We don't lay off. We cut the bet down at source. That's why I told you I'd rather take you at 10 per cent and not him. His I'd sooner turn down." [Emphasis added]

The testimony is alleged to be false because the defendant then knew that Hy Kamin was a listing post at the pay telephone at the Derby Turf Club in Las Vegas, Nevada; that Kamin was accepting wagers and turning them over to the defendant; and that Kamin and defendant had discussed "layoffs" of wagers. All of this was said to be in violation of 18 U.S.C. § 1621, which reads as follows:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly * * * will fully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury * * *."

On March 3, 1964, defendant made a motion to dismiss the indictment for failure to comply with the requirement that it be a "plain, concise and definite written statement of the essential facts constituting the offense charged." [Rule 7(c), Fed.Rules Crim.Proc.] It is also alleged that the indictment violates the Sixth Amendment to the Constitution of the United States in that it does not inform the defendant of the "nature and cause of the accusation". Defendant assigns five deficiencies in the indictment, each of which will be discussed below.

*Should the first ground of defendant's motion be sustained?* The indictment uses the words and phrases: listing post; taking action; turning some of it over to you; situation; a thing; lay-offs; and turns it over to you. [These expressions are italicized above, insofar as the defendant objects to their use.] Defendant contends that this language is so vague and equivocal and subject to varying interpretations that it cannot be used to sustain the indictment against him.

The best statement of the principles to be applied when such a contention is made is found in United States v. Lattimore, 94 U.S.App.D.C. 268, 215 F.2d 847 (1954). In Lattimore the defendant had been asked if he knew someone was a "Communist", and he answered in the negative and indicated that he understood there was a distinction between a Communist and a Socialist. He was also asked if he was a Communist "sympathizer", to which he answered in the negative. These answers were assigned as perjury, and defendant claimed that the terms used were too vague to support an indictment. The court, discussing the word "sympathizer", said, 215 F.2d at page 849:

"The word 'sympathizer' is not of sufficiently certain meaning to sustain a charge of perjury. This count is that Lattimore said he had never been a sympathizer whereas he had been a sympathizer. There is no definition of the term 'sympathizer' or any concrete specification of its content either in the indictment or in the statute. Without such definition or specification the term has no certain meaning."

But, in discussing the word "Communist" the court said, at pages 852–53:

"Lattimore says this count is invalid for vagueness, in that the word

'Communist' has no certain meaning and so the meaning of neither the question nor the answer can be ascertained. * * * So far as the face of the indictment is concerned the question put to Lattimore was whether he knew something. Upon the face of it Lattimore understood the question. His alleged answer not only reflected an understanding of the term used by his questioner but indicated a specific and clearly defined understanding of it. Answering, he drew a line between a Socialist and a Communist, surely an act which would not be attempted except by one who thought he knew what the subject of the question was. It may be true that the word 'Communist' may be used with different shades, gradations or variations of meaning, but all such are within a clearly established generic meaning. The word is not without a meaning which can be used with mutual understanding by a questioner and an answerer. The face of this indictment indicates that the term was so understood. If it was not so—if there was a misunderstanding between the two men —that fact should be asserted and shown as part of the defense."

■ Thus, Lattimore teaches that the test which is applied in such cases is neither wholly objective, nor wholly subjective. It would seem that the meeting of minds is the most important thing. Usually the words used are of such well known content that it will be quite apparent that the questioner and answerer understood each other. But, even if this would not be objectively obvious, if from the face of the indictment it appears that the minds of the questioner and answerer did, in fact, meet on the definition of the words used, the indictment will not be too vague. See also, United States v. Larocca, 245 F.2d 196 (3d Cir. 1957) (use of the word "business" not too vague in context); Boehm v. United States, 123 F.2d 791 (8th Cir. 1941), cert. denied, 315 U.S. 800, 62

S.Ct. 626, 86 L.Ed. 1200, rehearing denied, 315 U.S. 828, 62 S.Ct. 794, 86 L. Ed. 1223 (1942) (use of phrases, "pad expense accounts", "kick backs" and "slush fund" did not make the indictment too vague. But they appeared in at least one dictionary.); United States v. Schaier, 175 F.Supp. 838 (S.D. N.Y.1959) (use of expression "suggested" something was proper where it was perfectly obvious that the defendant understood the word as used.); and United States v. Lattimore, 127 F.Supp. 405 (D.D.C.), affirmed, 98 U.S.App.D.C. 77, 232 F.2d 334 (1955) (use of phrase, "follower of the Communist line" was too vague to support an indictment). Thus, in the case at hand the court, by the use of the above-mentioned standards, must determine whether the indictment shows that the minds of the defendant and his questioner met.

By an objective standard it is difficult to ascertain what is meant by "listing post", "action", and "lay-off". These do not appear to have any truly accepted meaning; at least not to the untutored layman. Of course, there may be a dictionary that indicates the definition of these words, but the court's attention has not been directed to one. Therefore, the indictment will only be found sufficient in these particulars if it shows on its face that it is probable defendant understood the terms used and answered accordingly.

■ There is nothing in the indictment to indicate that the defendant understood the phrase "listing post". In fact, the plaintiff has compounded the confusion by stating that "listing post" should read "listening post". [Opposition in part to defendant's motion for bill of particulars] Thus, plaintiff would convict defendant for indicating that Hy Kamin isn't "just a listing post", where plaintiff itself says Kamin in fact wasn't, but was a "listening post" instead. Suffice to say that the phrase "listing post" is so vague that it will not support a perjury indictment.

■ On the other hand, the form of the defendant's answers shows that he

probably knew what was meant by "action" and "lay-off". He used the words freely in his answers, just as anyone familiar with a particular trade's jargon would use it. So in one answer he said: "I would be tickled if he did if I wanted the *action*. In other words, the kind of *action* that Hy and I would bet jointly * * *." [Emphasis added] And at another point he not only indicates familiarity with the phrase "lay-off", he distinguishes it from another phrase by saying: "We don't lay-off. We cut the bet down at the source." Thus, on the face of the indictment, it appears that the minds of the questioner and the defendant met, and that there was complete mutual understanding when these words were used. If that was not truly the case, that can be "asserted and shown as part of the defense". United States v. Lattimore, supra.

The other words and phrases which defendant objects to are clear enough when read in context, and do not, in any way, vitiate the indictment.

■ Since all assignments of perjury can be put into a single count and proof of any one of them will sustain the count, it would seem that the whole count cannot be dismissed due to a vitiating vagueness in one of its assignments. See Arena v. United States, 226 F.2d 227 (9th Cir. 1955), cert. denied, 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956); and United States v. Otto, 54 F.2d 277 (2d Cir. 1931).

*Should the second ground of defendant's motion be sustained?* The second item of the motion asserts the following as grounds for dismissal:

"The indictment, in the following particulars, shows that the answers when read in conjunction with testimony immediately preceding and following the statement assigned as perjury do not sustain the charge:

"(a) The answer of defendant quoted on page 2, line 8, of the indictment is directed to joint betting by Hymen Kamin and the defendant.

"(b) The answer of defendant quoted on page 2 line 25, is directed to whether or not Hymen Kamin and the defendant did lay-off wagers and is not directed to whether they had discussed the lay-off of wagers."

■ As is indicated above, in order to show perjury the minds of the questioner and the defendant must meet. If the defendant does not understand the question and gives a non-responsive answer, that answer cannot be perjurous. He cannot have willfully stated a falsehood when he did not even understand the question. Thus, where it is clear from the face of the indictment that the defendant has not answered the question asked, he can hardly be held to have answered it falsely, and no assignment of perjury can be sustained.

■ Applying this principle to the case at hand, it is clear that the defendant's answer to the question concerning lay-offs will not sustain an indictment for perjury. He was asked if he had "discussed" lay-offs with Hy Kamin, and he said: "No. We don't lay-off. We cut the bet down at the source. That's why I told you I'd rather take you at 10 per cent and not him. His I'd sooner turn down." This whole rambling answer has little or nothing to do with the question. It is true that defendant said "No", but the rest of his answer explains that statement. Plainly, you cannot tear one word out of context and predicate a perjury charge upon it. Defendant was asked if he discussed lay-offs, and answered that he does not, in fact, lay-off. That is nonresponsive at worst, and in no way shows that he committed perjury.

*Should the third ground of defendant's motion be sustained?* The third ground of defendant's motion reads as follows:

The indictment fails to state the time when the acts, conduct and discussions to which the alleged perjury refers are supposed to have occurred.

This assertion of insufficiency seems wholly insubstantial. The defendant cites no authority to sustain the proposition that the indictment must state the facts or circumstances which make his statements false, and I have found none. The indictment alleges when the perjurous statements were made, and that the statements *are* false. It need not allege when the acts which will prove them false took place.

*Should grounds four and five of the defendant's motion be sustained?* Grounds 4 and 5 of defendant's motion read as follows:

4. The questions and alleged perjurious answers were obviously immaterial on their face, because they had no tendency to support any possible action of the grand jury in the Southern District of California within its competency.

5. The indictment fails to identify the subject which was under inquiry at the time of the alleged perjury.

Taken together, these grounds amount to an allegation that the indictment fails to make a sufficient allegation of "materiality" of the questions to the matter under investigation, whatever that may be.

There is no question but what an indictment for perjury must allege that the false answers of the defendant were "material matter". This indictment attempts to meet the requirement by simply stating that the matter *was* material. It seems to me that such an allegation is insufficient. It is true that the courts have often enunciated the proposition that the materiality of a proposed statement may be made to appear by a general allegation of materiality. But in those cases the courts have been presented with factual situations where the allegations went far beyond that bare allegation. The case of Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) is important in this regard, though it is not directly apposite. In that case the defendant was indicted for refusing to answer questions before a congressional committee. Under a certain statute this was made an offense, if the question was "pertinent to the matter under inquiry". The indictment merely alleged that the question was "pertinent", without saying why or stating the nature of the proceedings. The Supreme Court found that such an indictment was insufficient to sustain a conviction. It said that "pertinency" was the central core of the statute, and that it was hard to imagine a case in which an indictment failed so miserably to fulfill its primary office of informing the defendant of the charges against him. But, the government argued that "pertinency" should be treated as "materiality" is treated in perjury cases— that is, that one should be able to allege it in a general way, with no suggestion of the nature of the proceeding. In answer, the Supreme Court said, 369 U.S. pp. 771–772 n. 17, 82 S.Ct. p. 1051.

"The analogy between the perjury statute and 2 U.S.C. § 192 [the refusal to answer statute], while persuasive for some purposes, is not persuasive here, for the determination of the subject under inquiry does not play the central role in a perjury prosecution which it plays under 2 U.S.C. § 192. But even were the analogy perfect Markham [Markham v. U. S., 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441] [a Supreme Court prejury case] would still not control, for it holds only that a perjury indictment need not set forth how and why the statements were allegedly material. The Court carefully pointed out that the indictment did in fact reveal the subject under inquiry * * *. This has been equally true of other perjury indictments sustained by the Court."

Had the Supreme Court's discussion stopped after the first quoted sentence the case would seem to lend support to the proposition that a general allegation

of materiality, and nothing more, is all that is required. But the remainder of the quotation, and the whole gist of the opinion in Russell indicate that such an allegation would probably not be found acceptable. Almost all of the reported cases lend support to this proposition, at least by inference. See e. g., Hendricks v. United States, 223 U.S. 178, 32 S.Ct. 313, 56 L.Ed. 394 (1912) (where perjury before a grand jury was charged, but the nature of the investigation being conducted was set out); Markham v. United States, 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441 (1895) (where a general allegation of materiality was upheld, but the count made the subject of the inquiry very clear); Williams v. United States, 239 F.2d 748 (5th Cir.), cert. denied, 353 U.S. 975, 77 S.Ct. 1061, 1 L.Ed.2d 1138 (1957) (where a general allegation of materiality was held to be sufficient, but the indictment alleged that the perjury was committed at a certain hearing on defendant's motion to show a prior plea of guilty was coerced, and defendant had falsely testified to being beaten, etc.); Bilderback v. United States, 249 F.2d 271 (5th Cir. 1957), cert. denied, 356 U.S. 956, 78 S.Ct. 793, 2 L.Ed.2d 820, re-hearing denied, 357 U.S. 915, 78 S.Ct. 1153, 2 L.Ed.2d 1163 (1958) (where the nature of the proceeding—a criminal trial—was set out and the indictment said it was material to ascertain a certain fact for that trial, the court said a general allegation of materiality of certain testimony to the ascertainment of that fact was sufficient); United States v. Remington, 191 F.2d 246 (2d Cir.), motion denied, 342 U.S. 895, 72 S.Ct. 231, 96 L.Ed. 671 (1951), cert. denied, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952) (where the indictment stated that the grand jury was investigating possible violations of the espionage laws, and that a question about membership in the Communist party was material thereto, the court found this allegation sufficient); Travis v. United States, 123 F.2d 268 (10th Cir. 1941) (where a general allegation of materiality was found to be suffi-

cient, but the indictment alleged that the testimony was given at a certain bankruptcy proceeding, that it became material to know what happened to certain bonds belonging to the bankrupt, and then set out defendant's false testimony in that regard); Woolley v. United States, 97 F.2d 258 (9th Cir.), cert. denied, 305 U.S. 614, 615, 59 S.Ct. 73, 83 L.Ed. 391 (1938) (where a general allegation of materiality was upheld, but the indictment stated that an investigation before the S.E.C. was in progress and the circumstances surrounding operation of a certain corporation and defendant's connection with it were material matters); Claiborne v. United States, 77 F.2d 682 (8th Cir. 1935) (where the indictment stated the purpose of the grand jury investigation in great detail and then set out the allegedly false testimony); United States v. Schaier, 175 F.Supp. 838 (S.D.N.Y. 1959) (where the court said an indictment was valid if it set out the specific purpose of the grand jury inquiry and stated that defendant's testimony was material thereto. The specific United States Code sections involved were pleaded in the indictment); United States v. Allen, 131 F.Supp. 323 (E.D.Mich.1955) (where the indictment indicated that the defendant testified falsely at a certain trial in saying he was a C.P.A. and then set out the false testimony the court felt that materiality was clear); United States v. Laut, 17 F.R.D. 31 (S.D.N.Y. 1955) (where an indictment was dismissed for not showing materiality on its face); and United States v. Caligiuri, 35 F.Supp. 799 (D.N.J.1940) (where the indictment stated that at a hearing to justify a surety, defendant— the surety—had testified falsely as to taking compensation and as to other bonds he was surety upon, the court found that materiality was obvious on the face of the indictment.). The only apparent exception to the above authority is Paternostro v. United States, 311 F.2d 298 (5th Cir. 1962), and because of the peculiar facts of the case it may not be an exception at all.

Although materiality of the testimony is not the central core of the perjury statute, it is a matter which the plaintiff must prove. Therefore, it is a matter which the defendant must be informed of so that he will understand and be able to prepare a defense to the charges against him. As the multitude of cases in this area indicate, the courts have seldom—if ever—upheld an indictment for perjury, which alleged materiality in general terms and did not at least indicate the nature or purpose of the proceeding in which the testimony was given. Thus, although the courts have often stated that materiality can be alleged in general terms, they have done so in the context of cases where the defendant was given enough information to allow him to prepare his defense to the charge against him. Where materiality is alleged in general terms, and the nature of the proceeding is not indicated, the indictment in no way shows the defendant or the court the all important nexus on which the defendant's criminality depends. This can hardly be called informing him of the nature of the charge against him, or a proper pleading of essential facts. This is not to say that an indictment must allege how and why the government thinks the matter is material; it need only allege enough to give the defendant insight into the nature of the charge against him.

Therefore, in the case now before this court, the indictment is insufficient in that it alleges both materiality and purpose in terms so general as to completely preclude any possibility of the defendant's being properly informed of the nature of the charge against him.

Since the indictment merely makes a general allegation of materiality and does not in any way make this allegation more specific by stating the purpose of the grand jury investigation or otherwise, it must be dismissed.

Now, therefore, it is ordered that the indictment is dismissed.

It is further ordered that the clerk of the court this day serve a copy of this order by United States mail upon the United States Attorney and the attorney for the defendant.