**UNITED STATES of America,
Appellee,**

v.

**Samuel BRONSTON, Defendant-
Appellant.**

**No. 199, Docket 71–1533.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 28, 1971.

Decided Dec. 10, 1971.
Certiorari Granted April 17, 1972.

Lumbard, Circuit Judge, dissented
and filed opinion.

**556**

Sheldon H. Elsen, Orans, Elsen & Polstein, New York City (Lewis Shapiro, John S. Martin, Jr., New York City, of counsel), for appellant.

Walter M. Phillips, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York, Harold F. McGuire, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Appellant Samuel Bronston was convicted on February 2, 1971, by a jury in the United States District Court for the Southern District of New York, Judge Charles H. Tenney presiding, on one count of perjury in violation of 18 U.S. C. § 1621 [1] which arose from his allegedly false testimony before a referee in an 11 U.S.C. § 44(a) bankruptcy examination. Judge Tenney, in a thorough memorandum opinion dated April 15, 1971, 326 F.Supp. 469, denied appellant's motion for acquittal or, alternatively, a new trial, and on April 21, 1971, sentenced him to six months' probation and a $2,000 fine. We affirm the conviction.

Appellant was the president and sole owner of Samuel Bronston Productions, Inc., which between 1958 and 1964, by itself or through seventeen affiliated companies, produced a large number of motion picture spectaculars, including "El Cid," "Circus World" and "The Fall of the Roman Empire." With business offices scattered throughout the world, and with investment per movie as high as $17 million, the Bronston companies had accounts in numerous banks in several countries; in 1962, for instance, there were 37 accounts in five countries. As president of the principal company bearing his name, Bronston personally supervised virtually all of the transactions involving each of those accounts.

In June 1964, following the withdrawal of support by a principal financier earlier in the year, Samuel Bronston

---

1. 18 U.S.C. § 1621 reads in pertinent part:
   Whoever, having taken an oath before a competent tribunal officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify . . truly, . . . willfully and contrary to such oath states . . . any material matter which he does not believe to be true, is guilty of perjury.
   . . .
   Mr. Bronston was acquitted by the jury of the second of the two perjury counts charged against him.

Productions, Inc., petitioned for an arrangement with its creditors pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. A Section 21(a) hearing was held on June 10, 1966, before an appointed referee, to determine the existence and location of the company's assets for the benefit of its creditors.

Samuel Bronston, while under oath at the hearing, responded as follows to questions regarding bank accounts in Switzerland:

> Q. Do you have any bank accounts in Swiss banks, Mr. Bronston? A. No, sir.
>
> Q. Have you ever? A. The company had an account there for about six months, in Zurich.
>
> Q. Have you any nominees who have bank accounts in Swiss banks? A. No, sir.
>
> Q. Have you ever? A. No, sir.

It was this colloquy which formed the basis of the Government's perjury charge against appellant. At the trial the Government produced two witnesses who testified and introduced documents showing that in October 1959 Bronston had opened an account in his own name at the International Credit Bank in Geneva, Switzerland. Under Swiss law, the account was secret, although it was not a numbered account. The account was active from its opening until 1962, when it became dormant; it was closed in 1964. During its period of activity, checks drawn on the account totalled over $100,000; some of the transfers from the account were made to Samuel Bronston Productions, Inc.

Appellant did not testify at his trial, and the thrust of his witnesses' testimony was that the account was no secret, since in 1965 Bronston had executed a waiver of secrecy for the benefit of all creditors in respect to all Swiss banks. Nevertheless, while it was never disputed that Bronston's company had had an account in Zurich for six months, the Government proved to the satisfaction of the jury that Bronston intentionally had not told the whole truth at the hearing regarding his Swiss bank accounts.

The questions posed by this appeal are whether an answer under oath, which is true—but only half true—can constitute perjury under 18 U.S.C. § 1621; and whether the evidence against Bronston is sufficient to sustain his conviction. Materiality has been conceded.

Bronston's principal arguments center on the question asked him, which was the basis of the indictment, "Have you ever [had any bank accounts in Swiss banks]?" First, he contends that the word "you" made the question ambiguous so that he could not understand whether the question referred to him personally or to his companies; he urges that a question of such imprecision cannot support a conviction for perjury. Second, appellant argues that, whether or not the question was ambiguous, the Government failed to prove that he remembered the account at the time of the examination, and since his response regarding the Zurich account was true, there was not a sufficient evidentiary basis for the jury's finding that Bronston intentionally had given false testimony in the bankruptcy proceeding.

■ A crucial element of the crime of perjury is the belief of the defendant concerning the verity of his sworn testimony. United States v. Winter, 348 F. 2d 204, 210 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965). In order to support a perjury conviction, the question asked must be of such clarity that it is capable of eliciting an answer which the defendant knows to be false; that is, it must adequately test the defendant's belief in the truthfulness of his answer. United States v. Wall, 371 F.2d 398, 400 (6th Cir. 1967). Accordingly, a defendant may not lawfully be convicted of perjury where, under oath, he gives an answer which is "literally accurate, technically responsive, or legally truthful." Blumenfeld v. United States, 306 F.2d 892, 897 (8th Cir. 1962); Smith v. United States, 169 F.2d 118, 121 (6th Cir. 1948); Hart v. United States, 131 F.2d

59, 61 (9th Cir. 1942); United States v. Slutzky, 79 F.2d 504, 505 (3rd Cir. 1935); Galanos v. United States, 49 F.2d 898, 899 (6th Cir. 1931).

■ Here, Bronston would have us rule that the question upon which his conviction is predicated was misleading, imprecise and suggestive of various interpretations, thus making it incapable of supporting the conviction. To the contrary, we believe that the question was readily susceptible of a responsive reply and that it adequately tested the defendant's belief in the veracity of his answer.

The principal question was preceded by the question, "Do you have any bank accounts in Swiss banks, Mr. Bronston?" The "you" in "Have you ever?" could in the singular refer only to Mr. Bronston, or in the plural to Mr. Bronston personally and the company, there being no plausible suggestion that in the next question the examiner had shifted from inquiring about Bronston's personal accounts to those solely of his company. By answering in reference to "the company" Bronston indicated his understanding that "you" included, or meant only, the personal you; otherwise, he would not have distinguished his answer by prefacing it with "the company."

Thus, this is not the *Wall* [2] case, where the question was "susceptible of two different interpretations," under one of which the answer might have been truthful. Nor is it the *Galanos* [3] case, where the question was precise and the answer similarly precise, literally true and wholly responsive to the exact inquiry. Here the question unambiguously asked Bronston simply to state whether he had ever had a Swiss bank account. Yet Bronston answered that "[t]he company" had had an account in Zurich for six months. While that much of the answer was literally true, the jury was entitled to find that the answer as given was intended to represent that Bronston personally did not have such an account.

Bronston contends, however, that the truth in the half-truth response takes his answer out of the realm of perjury, citing United States v. Slutzky, *supra,* and United States v. Cobert, 227 F.Supp. 915 (S.D.Cal.1964). But under analysis, those cases do not aid him.

In *Slutzky* the defendant was asked whether he had ever been convicted of a felony in a certain jurisdiction. His answer was a truthful and responsive "no," since in that jurisdiction there was no classification of crimes into felonies and misdemeanors. *Cobert* is also unlike the present case, for there a defendant was charged with perjury for answering a question relative to a "listing post" when it did not appear from

---

2. United States v. Wall, 371 F.2d 398, 400 (6th Cir. 1967). There the basis of the conviction was the defendant's response to the question, "Have you ever been on trips with Mr. X?" On defendant's motion for a bill of particulars the Assistant United States Attorney acknowledged that "on a trip" "can mean either one of two things: That a person accompanied somebody else travelling with, or it can mean that they were there at a particular place with, a person." The difference between *Wall* and Bronston's interpretation of "you" is apparent.

3. Galanos v. United States, 49 F.2d 898 (6th Cir. 1931). There the defendant responded truthfully to a question which was ultimately, from the Government's angle, so precise as to be imprecise. When asked whether "you [had] made arrangements yourself," defendant replied negatively. In fact, an accomplice had made the arrangements. The Sixth Circuit overturned defendant's conviction for perjury, reciting the following language which appellant would have us apply to his situation:

> . . . [H]is negative answer was literally true. Clearly he cannot be convicted of perjury merely because his literally accurate answer might have been somewhat modified in effect if he had been asked to state all the circumstances. Perhaps, if he had been asked specifically, he would have answered truly. 49 F.2d at 899.

Here, had further testimony as to the company's account been elicited, the creditors would still have been in the dark about Bronston's personal account.

common knowledge or in the indictment that he understood the phrase "listing post." The questions posed to Bronston, however, were too plain to be construed as referring solely to the company; his nonresponsive answer very clearly indicated his comprehension of what was called for by the question.

For the purposes of 18 U.S.C. § 1621, an answer containing half of the truth which also constitutes a lie by negative implication, when the answer is intentionally given in place of the responsive answer called for by a proper question, is perjury. *See, e. g.,* United States v. Rao, 394 F.2d 354, 356–357 (2d Cir.), cert. denied, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968). This must be so especially in the context of a Section 21(a) examination, which by its nature is a searching expedition, where the witnesses are the only parties who know the truth and are able to divulge it. "The general purpose of the statute [11 U.S.C. § 44(a)] is to provide a method for a searching inquiry into the condition of the estate of the bankrupt, to assist in discovering and collecting the assets, and to develop facts and circumstances which bear upon the question of discharge." Travis v. United States, 123 F.2d 268, 271 (10th Cir. 1941); *see* Cameron v. United States, 231 U.S. 710, 717, 34 S.Ct. 244, 58 L.Ed. 448 (1914); Sigman v. United States, 320 F.2d 176, 177–178 (9th Cir. 1963), cert denied, 375 U.S. 967, 84 S.Ct. 485, 11 L.Ed.2d 415 (1964). A half-truth containing a lie, interjected by a knowledgeable and interested witness, may result in side-tracking the person inquiring into the existence of assets known only to the bankrupt. Or it may persuade the interrogator to proceed on another line of questioning. See United States v. Stone, 429 F.2d 138, 140–141 (2d Cir. 1970). Either consequence is contrary to the "whole truth" principle of the oath.[4] The question here was not from out of the blue or on a collateral matter. The Section 21(a) examination was for the very purpose—known to appellant—of eliciting the kind of information this question called for.

Since we cannot say as a matter of law that Bronston's half-truth answer to the question asked will not support his conviction, his appeal must fail unless we find a lack of evidence to support the jury's determination of guilt. Upon review, the evidence must be viewed in the light most favorable to the Government, and all permissible inferences will be drawn in its favor.

Appellant claims that there was an insufficient showing that he remembered his personal Swiss bank account and intentionally neglected to disclose it. Specifically, he argues that the account was dormant for four years before the question and was closed two years before, that it was only a small part of a large stream of widespread banking activity, and that in 1965 his creditors had received a waiver of bank secrecy which would have permitted them to locate the International Credit Bank account, so that, in effect, that account was no secret. The Government presented contradictory or qualifying evidence in reply.[5]

---

4. The Bankruptcy Act and the orders thereunder do not specify a particular form of oath to be administered in bankruptcy proceedings, *compare* 11 U.S.C. § 43, 44; Bankruptcy Gen.Order 22, 28 U.S.C. Under Gen.Order 22, the Federal Rules of Civil Procedure—insofar as they are not inconsistent with the Act and orders—govern the examination of witnesses, but the Federal Rules themselves do not contain the form of a designated oath. The forms used in bankruptcy procedures, however, speak in terms of truth according to the person's best knowledge [Bankruptcy Form 1, 28 U.S.C.] or truth and completeness to the best of his knowledge [Bankruptcy Form 3, 28 U.S.C.]. It may be deduced from these orders and forms and the purpose of the Act that an oath given in a bankruptcy proceeding basically takes the same form, and has the same legal consequences, as an oath composed of the traditional words of "truth, the whole truth, and nothing but the truth." *See* 6 J. Wigmore, Evidence § 1818 (3d ed. 1940).

5. The jury could have been more impressed by the facts that the purported waiver of bank secrecy referred to all banks in

■■ In short, the jury was presented with conflicting facts relative to Bronston's state of mind at the time he answered the bank account questions. While the defendant's knowledge of the falsity of his statements at the time he gave them is essential to a perjury conviction under 18 U.S.C. § 1621, United States v. Sweig, 441 F.2d 114, 117 (2d Cir.), cert. denied, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); United States v. Stone, 429 F.2d 138, 140 (2d Cir. 1970); La Placa v. United States, 354 F.2d 56, 58 (1st Cir. 1965), cert. denied, 383 U.S. 927, 86 S.Ct. 932, 15 L.Ed.2d 846 (1966), absent an admission by the defendant, the only way that his knowledge can be determined is through circumstantial evidence. American Communications Ass'n, CIO v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 94 L.Ed. 925 (1950); United States v. Sweig, *supra.* The kinds of circumstantial evidence which the jury properly may consider as reflecting the defendant's state of mind at the time of allegedly perjurious testimony are proof of the objective falsity itself, proof of a motive to lie, and other facts showing that the defendant knew more than he stated. *See* United States v. Sweig, *supra;* United States v. Rao, *supra;* United States v. Jones, 374 F.2d 414, 419 (2d Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 40, 19 L.Ed.2d 95 (1967).

■ Here the jury could have inferred that Bronston willfully gave false and evasive testimony from the conclusive proof of the existence of his personal Geneva bank account; from the motive that the principal officer and owner of a debtor corporation might want to conceal assets from the corporation's creditors; and from the unlikelihood that a businessman would forget a bank account that had the duration of this ac-

count, a $100,000-plus volume of transactions in it, and was of a secret nature. Thus, there having been sufficient evidence upon which the jury could have established guilt beyond a reasonable doubt, we affirm the conviction.

LUMBARD, Circuit Judge (dissenting):

I dissent.

The majority states the issue in this case in a manner which is unacceptable to me. The issue is not "whether an answer under oath, which is true—but only half true—can constitute perjury under 18 U.S.C. § 1621," for this phraseology intimates that Bronston's answer was somehow half false, and even the majority cannot help but recognize that "it was never disputed that Bronston's company had had an account in Zurich for six months. . . ." I think the issue is better stated as whether a perjury conviction can stand when the defendant's answer to a question under oath is literally truthful but unresponsive. I further think the answer is that it cannot, even if the defendant's answer is motivated by a willful attempt to conceal some material fact.

During a section 21(a) hearing under Chapter XI of the Bankruptcy Act Bronston was asked by the referee, "Do you have any bank accounts in Swiss banks, Mr. Bronston?" He responded in the negative. The next question was "Have you ever?" and Bronston replied, "The company had an account there for about six months, in Zurich." For this reply he has been convicted of perjury, and the majority affirms today notwithstanding the unchallenged accuracy of Bronston's statement, unequivocal case law, and the clear words of the perjury statute requiring for conviction that a person under oath willfully state "any

Switzerland and listed seventeen company names under which an account could have been opened (creating the proverbial needle-in-the-haystack situation); and that one of Bronston's own corporate officers, who had prepared appellant's tax

returns for several years in the early 1960's, testified on cross-examination to the effect that he did not know about the Geneva account at the time it was active.

material matter which he does not believe to be true."[1]

The majority acknowledges that "A crucial element of the crime of perjury is the belief of the defendant concerning the verity of his sworn testimony [citation omitted]," that "In order to support a perjury conviction, the question asked must be . . . capable of eliciting an answer which the defendant knows to be false [citation omitted]," and that "the defendant's knowledge of the falsity of his statements at the time he gave them is essential to a perjury conviction under 18 U.S.C. § 1621 [citation omitted]." Yet in face of these clear statements of the law and the equally clear wording of the statute the majority finds that, while Bronston's answer was truthful, "the jury was entitled to find that the answer as given was intended to represent that Bronston personally did not have such an account."

On the contrary, I believe that once testimony is found truthful there can be no perjury conviction as a matter of law, and the jury is not entitled to consider whether the defendant hoped that a truthful answer would be interpreted in any particular way. Whether Bronston's answer was calculated to mislead the questioner and frustrate the bankruptcy proceedings should not here concern us. We should inquire into his state of mind only to determine whether or not he believed in the truthfulness of his answer.

The confusion betrayed by the majority may well result from a misperception of several cases which Bronston cites.

In Galanos v. United States, 49 F.2d 898 (6th Cir. 1931), the defendant was asked "Don't you remember . . . that you made arrangements yourself for the making of a bond?" He replied he did not, frustrating an attempt to prove his association with the party in need of a bond. His conviction for perjury was reversed, the court noting that, although he participated in negotiations leading to the making of the bond, he was entitled to consider the question as an inquiry whether he *himself* had procured the bond, and that his negative answer was consequently true.

The nature and scope of the question was also involved in United States v. Slutzky, 79 F.2d 504 (3rd Cir. 1935). The defendant was asked whether he had ever been convicted of a felony, and his negative response was found literally accurate because New Jersey, where he had been convicted of crime, did not classify any crimes as felonies. Thus his perjury conviction was overturned.

In United States v. Wall, 371 F.2d 398 (6th Cir. 1967), an interpretation of the question also decided whether the defendant's answer was truthful. The defendant responded negatively to the question "Have you ever been on trips with Mr. X?" The government admitted that the question could be construed as asking either whether the defendant had ever accompanied Mr. X on a trip, or whether she had ever been on a trip at a particular place at the same time as Mr. X. Thus, although she and Mr. X had been in Florida together, the perjury conviction was reversed because there was no evidence to establish the falsity of her answer with respect to the first interpretation.

These cases have in common the fact that the truthfulness of the *defendant's* answer turns on the scope or interpretation of the crucial question. Bronston argues that the question he faced was also ambiguous, and that his answer was a truthful response to one interpretation. We should not let this argument obscure the fact that his response was truthful regardless of which interpretation of the referee's question is adopted.[2]

---

1. Section 1621 reads, in pertinent part:
   Whoever, having taken an oath before a competent tribunal, officer, or person . . . that he will testify . . . truly . . . willfully and contrary to such oath states . . . any material matter which he does not believe to be true, is guilty of perjury . . .

2. To the interpretation we reject ("Have you, meaning the company, ever had an

Because I agree with the majority that the question put to Bronston was unambiguous, I likewise agree that the above cases are correctly distinguished —but only insofar as they deal with ambiguous questions.[3] Insofar as they state the law upon a finding that the defendant's testimony was truthful, they call for reversal of Bronston's conviction. Although the majority would dismiss *Wall* because there the question was found ambiguous,[4] *Wall* also said that a defendant cannot lawfully be convicted of perjury when his answer is literally accurate, 371 F.2d at 400. *Galanos* cannot be distinguished because the defendant's answer was, in the majority's words, "precise, literally true and wholly responsive,"[5] for Bronston's answer was also literally true, and precision and responsiveness are not relevant to the crime of perjury.[6] *Galanos* said un-

equivocally that the defendant clearly "cannot be convicted of perjury merely because his literally accurate answer might have been somewhat modified in effect if he had been asked to state all the circumstances." 49 F.2d at 899. *Slutzky* cannot be disregarded, as the majority would do, because the defendant's answer was "truthful and responsive" and Bronston's "non-responsive." *Slutzky* said "If the defendant's answers to questions were legally truthful, he cannot be held for perjury." 79 F.2d at 505. A truthful answer, even if not responsive to the question asked, is not perjury under § 1621.[7]

Suppose, in response to the question "Have you ever [had any bank accounts in Swiss banks]?" Bronston had truthfully replied, "My daughter attended school in Switzerland." Had the questioning stopped there, could Bronston

account in Swiss banks?"), Bronston's answer was truthful. To the only permissible interpretation ("Have you personally ever had such an account?"), his answer was also true—but not responsive to the question.

3. In these cases the issue was, as it must be under the statute, whether the defendant had told the truth. This in turn depended in large measure on a reading of the original question. If a certain interpretation was permissible, the defendant had told the truth. If not, he had lied. But here a determination of the meaning or scope of the question will not settle the issue of whether Bronston lied, since Bronston's answer was not responsive to the question.

4. In *Wall* the question put to the defendant was found by the appellate court susceptible to two interpretations, and the conviction was reversed. The contrapositive position, that in our case because the question was clear the conviction must stand, is untenable. The logic to this approach would be impeccable if indeed Bronston had *lied* to a question found capable of only one interpretation. But, however purposefully evasive Bronston may have been, his response was literally truthful. Were we to focus on cases dealing with ambiguous questions the true analogy would be to a case where a question was found susceptible to two interpretations and the defendant's answer was responsive to neither.

5. *Galanos* required only that the defendant's answer be literally true, and never even used the words "precise" and "responsive."

6. In footnote 3 of the majority opinion, our case is apparently further distinguished from *Galanos* because "had further testimony as to the company's account been elicited, the creditors would still have been in the dark about Bronston's personal account." As pointed out in the text *infra*, the success or failure of the defendant's effort to sidetrack a particular inquiry has no bearing on whether or not his testimony was perjurious.

7. The majority also would distinguish United States v. Cobert, 227 F.Supp. 915 (S.D.Cal.1964) because there the question was vague. The court also said, however, that "where it is clear from the face of the indictment that the defendant has not answered the question asked, he can hardly be held to have answered it falsely, and no assignment of perjury can be sustained." The court further noted that the defendant's answer was "nonresponsive at worst, and in no way shows that he committed perjury." 227 F.Supp. at 919. That Bronston's nonresponsive answer was perhaps not a product of misunderstanding makes no difference. A deliberate failure to respond is no more culpable than a failure prompted by confusion, especially when the answer given was concededly truthful.

lawfully be convicted of perjury? Could he be found willfully to have stated any material matter which he did not believe to be true?

That his actual answer was less obviously unrelated to the question, and therefore perhaps more likely to deceive, is irrelevant because the crime turns not upon whether he successfully deflected a more precise question but upon whether he believed in the truthfulness of his testimony. It may be that this puts a burden on the questioner to recognize when he is being led astray, but I prefer to insist upon the questioner's acuity than to distort the statute. Had the referee here noticed that Bronston's answer was unresponsive and questioned him with particularity about his personal accounts, and had Bronston thereupon answered responsively, I suspect that no one would think his original unresponsive answer perjurious. Bronston's conviction should in no degree depend on the referee's failure to notice he was being diverted.